## STATE *v.* CHADWICK AND BROWN.

VERIFICATION OF PLEADING.—The want of a proper subscription or verification, is a mere irregularity, which is waived by pleading over.

STATE LAND FUNDS.—TITLE IN STATE.—The legal title to the funds arising from the sales of state lands by the board of commissioners, is in the state, and enables it to maintain any action, suit or proceeding against mere wrong doers, which may be necessary or proper for the recovery or preservation thereof.

IDEM—COMMISSIONERS ARE LAWFUL CUSTODIANS.—The board of commissioners is the lawful custodian of such funds, except the proceeds of the lands donated to the state, by congress, to aid in the erection or completion of public buildings, and is authorized by law to expend as much of such funds as may be necessary to defray the expenses of selecting and selling such lands, and the lawful disposition and management of the proceeds.

PAYMENT—HOW APPLIED.—An allegation in the answer of the members of the board, in a suit for an accounting by the state, in effect that all sums received and not paid into the state treasury, have been legally expended in payment of just and legal claims against the state, for necessary services in connection with such lands, performed by divers persons, at the request of such board, state only legal conclusions, and tenders no issue of fact.

ACCOUNTING—MONEY RECEIVED.—A payment on an open account, in the absence of any peculiar circumstances rendering an application according to equitable principles necessary, must be applied toward the extinguishment of the several items of indebtedness, according to priority in point of time. The gist of a suit for an accounting, being the failure to account for moneys received, a distinct allegation in the complaint of conversion of such money by the defendant, wholly unsupported on the trial by proof, will not prevent a recovery by plaintiff, of the amount shown to have been received and not accounted for by the defendants.

APPEAL from Marion County.

### STATEMENT.

This was a suit in equity for an accounting, brought by the state of Oregon against the defendants in the circuit court for Marion county. The complaint was filed June 3, 1879. It alleges, in substance, that the defendant, S. F.

Chadwick, was the duly elected and qualified secretary of state, and acting governor of the state of Oregon, from February 2, 1877, to September 9, 1878, and that the defendant, A. H. Brown, was the duly elected, qualified and acting treasurer of said state during said period. That during said period said defendant, *ex-officio* constituted the board of commissioners for the sale of school and university and other lands in the complaint mentioned, for said state, and for the investment of the proceeds arising therefrom. That during said period defendants, as such board of commissioners, and in accordance with their lawfully prescribed duties, received from the sales of lands belonging to the state, large and divers sums of money.

Then follows an approximate statement in detail of the several amounts so received from the sales of the several different classes of lands respectively, and amounting in the aggregate to the sum of $87,062 15. It then alleges as follows: That the defendants have neglected and failed to lawfully account for, and pay into the treasury, the said sums of money so received by them as aforesaid, or any part or portion thereof, except the following amounts paid into the treasury, to-wit:

Then follows a detailed statement of the several amounts paid into the treasury, from the proceeds of sales of the different classes of lands respectively, amounting in all to the sum of $81,609 92.

It then alleges that the defendants have converted the several amounts so received by them and not paid into the state treasury, and applied them to their own use, and diverse other uses and purposes, without authority of law, and contrary to the trust reposed in them, and concludes with a prayer for an accounting, etc. It is subscribed by "J. M. Thompson, attorney for plaintiff."

The defendants moved to strike the complaints from the files of the circuit court, for the reasons:

1. That it was not signed by the district attorney.
2. That the suit was brought without authority.
3. That the complaint was not properly verified.

The court overruled the motion. They then demurred to the complaint on the same grounds. This also was overruled.

The answers deny the receipt of any greater amounts in any case than the complaint admits to have been accounted for and paid in the state treasury; and then as a separate defense, alleges the following facts:

"That all sums of money received by the defendants, or either of them, as the proceeds of the sales of lands referred to in the complaint, or otherwise, were duly accounted for and paid into the treasury in the manner provided by statute and the laws of this state."

The plaintiff, in its replications, denied this allegation. The separate defense in Brown's answer contains the following additional allegation, which was demurred to by plaintiff, and its demurrer being overruled, was not noticed in its replication.

"That all sums of money received by them, or either of them, as the proceeds of the sales of such lands, and not actually paid into the treasury, were expended by them (the defendants) as such board of commissioners, in good faith and in accordance with the constitution and laws of this state, and the orders, rules and regulations made and adopted by said board, in good faith, and according to law, and in the payment of claims justly and legally due and owing by the plaintiff, to divers persons, for services performed by them for the state, at the request of said board, in selecting, surveying and performing other duties neces-

sary to be performed in connection with said lands, and for which said board was authorized, by law, to contract and pay for, out of such funds; that all such claims were paid for the benefit of the plaintiff, and the defendants are entitled to be credited therewith."

The case being at issue, was referred to Hon. M. P. Deady to find the facts and state his conclusions of law thereon. He found a balance due the state of $2,374 92, and recommended a decree against the defendants for that amount. The defendant moved to set all the findings of facts which were unfavorable to them aside, as not being supported by the evidence, and to have certain payments made by T. H. Cann, who was clerk of the board, from September 1870 to September 9, 1878, made to the board of commissoners and state treasurer after that date, and amounting to $8,951 85, or so much thereof as might be necessary for that purpose, applied in satisfaction of any deficiency which might be discovered in their accounts for the term commencing February 2, 1877, and ending September 9, 1878.

The court overruled the motion, and rendered a decree in accordance with the report, from which the defendants appealed. The other necessary facts are stated in the opinion.

*Richard Williams*, for appellant.

*A. C. Gibbs and W. G. Piper*, for the state.

Opinion by Watson, C. J., Waldo, J., concurring, Lord J., not sitting.

The original complaint in this suit was not subscribed by the district attorney of the 3d judicial district, when the suit was brought, and the appellants, the defendants below, moved to strike it from the files of the court on this ground, and also attempted to raise the same point by demurrer. The circuit court overruled both the motion and demurrer

and the appellants therefore filed their answer and the cause was heard and determined upon the merits. The decree of the circuit court being against the appellants, they bring this appeal and assign the forgoing rulings of the court as error.

We need not determine whether the proper district attorney alone can appear for and represent the state in judicial proceedings. That question is not presented by the records in this case. The objections made by appellant in the court below and which were passed upon there, were that the complaint was not signed by the proper district attorney, and that the suit was unauthorized. But these objections were preliminary in their nature, and were waved by filing the answer. (Moak's Van Santvoord's Pl., 778; *Delafield* v. *State of Illinois*, 2 Hill, 161; *Greenfield* v. *Steamer Gunnell*, 6 Col., 67; *Bell* v. *Railroad Co.*, 4 Wall., 598; Civ. Code, sec. 65.)

Neither the subscription nor verification constitute any part of the complaint, and their omission can only be deemed an irregularity, which would justify the court in striking it out, on motion. If appellant failed to apply for such relief, or having made the application and been refused the relief they were entitled to, they then waved the right to insist upon it further, as they did in this instance, by filing their answer and proceeding to trial on the merits, in either event they could not be held to urge their objections, on appeal in this court. They cannot be permitted to take issue on the merits, and afterwards insist that the proceeding on the part of the state was irreguliar or unauthorized. The provision of the statute for the signing of pleadings by the parties, or their attorneys, is a general one and applies to the state as well as individuals. (Civ. Code, sec. 79.)

If the failure of any individual to subscribe his pleadings

is but a mere irregularity which is waved by the opposite party pleading over, the same must hold true where the pleadings of the state disclose the same defect. The fact that the complaint in the present instance appears to have been subscribed by an attorney who possibly had not and could not have sufficient authority to institute the suit on behalf of the state, does not alter the case. His signature, if it be deemed wholly insufficient, can only be regarded as surplusage, and the complaint occupies the same position as though it had never been subscribed at all.

Upon the second point contended for by appellants, that the board of commissioners for the sale of school lands, and not the state should have brought this suit, it is sufficient to say that while such board was created by the constitution, with power to sell, in pursuance of legislative enactment, the school and university lands belonging to the state, and invest the funds arising therefrom, which power of sale was afterwards extended by statute over all classes of state lands, still the legal title and property in such funds have ever remained in the state, until expended in accordance with some provision of law, in the same manner and to the same extent that the legal title and ownership of the lands from whose sale they were derived, were vested in the state, prior to their lawful disposal. (Art. VIII., sec. 5, state constitution, titles II. to VII., miscellaneous laws.) And this was sufficient to enable the state to maintain this suit against the appellants, who do not attempt to shelter themselves behind the power and authority of such board of commissioners. (*People* v. *Booth*, 32 N. Y., 397; *People* v. *Ingersoll*, 58 Ind., 1.)

The next question to be considered arises from respondent's omission to reply to the second allegation in the separate defense, in the answer of the appellant Brown. The

referee found, as a conclusion of law, that the board of commissioners were authorized to defray the expenses of selecting and selling the various classes of state lands, and disposing of the proceeds as required by law, out of such proceeds, with the single exception of clerical aid in the case of school lands. The court below in confirming the report, necessarily adopted this conclusion as its own. We are satisfied with the correctness of this view. It seems to be only a fair deduction from the various legislative provisions on the subject, and to accord with the practical interpretation given by the legislature of the powers and duties of the board of commissioners. In attempted conformity with this view, evidently, the allegation in the separate defense in Brown's answer was framed.

We shall pass over the question of the effect of such a defense when, sufficiently alleged, as a bar to a suit for an accounting properly brought. For it is apparent, we think, from the most cursory examination of the allegation referred to, that it states only conclusions of law, and not issuable facts. It is, in substance, that the money for which the account is sought has all been legally expended by the appellants as such board of commissioners. No denial of such allegations was necessary. Besides, it also appears from the record in the case that an account of such expenditures was taken before the referee, and that the appellant not only appeared before him and offered evidence to establish such items, but appeared before the court below, when his report was filed, and moved that a portion of said report disallowing certain of such items, amounting to the aggregate sum of $712 07, as not having been proven, be set aside. It is thus made apparent from the record itself, that the issue intended to be tendered by such allegation in the separate defense in Brown's answer, was as fully tried and de-

termined as it could have been under the most formal denials in the replication, and that, too, without any objection being interposed by appellants until the case had been brought into this court on appeal. The objection would be too late if otherwise well grounded.

The appellants contend, in the next place, that the referee should have credited them with a portion, at least, of the money paid into the state treasury, and to various individuals, by T. H. Cann, as shown by his supplimental report of June 9, 1880, in evidence in the case, and amounting in the aggregate to the sum of $8,951 85, after the expiration of their official term as members of such board of commissioners, and of Cann's relation thereto as clerk, and that the court below erred in refusing to set aside or modify the report of the referee in this respect. The evidence in regard to the funds with which these payments were made by Cann is extremly meagre and unsatisfactory. It appears, however, from Cann's testimony, that all the money used in making such payments was derived from the sales of the various classes of state lands by the board of commissioners, and entrusted to his keeping as clerk of the board. In his testimony, as reported by the referee, Cann says in reference to this subject: "The payment of $8,951 85 came from a good many sources. The sale of land. * * * The moneys did not come from the University fund. It was moneys paid in for land that did not accrue to the State. * * * I ascertained that I still owed the state the sum of $8,951 85, because I had the money, and my books showed it after 1870. My accounts balanced in 1878, notwithstanding this $8,951 85. The money was deposited for lands not yet secured to the state."

These extracts from his sworn testimony, the statement contained in his supplemental report, the testimony of E. P.

McCornack, Cann's successor as clerk of the board of commissioners, showing that the payments stated in the supplemental report to have been made, had been made as reported; and the state of the various funds to which the proceeds of the sales of the several classes of state lands respectively belonged, at all times, from September, 1870, to September, 1878, a period embracing two official terms of said board, and covering the whole time that Cann was employed as clerk, comprise all the evidence as to the origin of such funds, and other facts from which the rule as to their application was to be deducted by the referee. He applied the payment made by Cann upon the first deficiencies in the accounts of the board occurring during Cann's term as clerk, commencing in September, 1870. The result was that such payments were wholly exhausted in the settlement of deficiencies happening prior to Feb. 2, 1877, when by the resignation of Gov. Grover the board was left composed of the appellants, S. F. Chadwick, secretary of state, and acting governor, and A. H. Brown, state treasurer, only, and leaving nothing to be applied upon the deficiencies subsequently occurring in their accounts, found by the referee to amount to the sum of $2,381 59. It was conceded by both parties at the hearing, that there never was any appropriation of the payments made by Cann by either party, and that it was a simple question of law, upon the foregoing facts, how it should be applied. The general rule, that an indefinite payment on a running account will be applied to extinguish the several items of indebtedness according to their priority in point of time, will not be questioned. ( *U. S.* v. *Kirkpatrick*, 9 Wheel., 739.) But appellants claim there was something peculiar in the circumstances of the present case, which takes it out of the operation of the general rule. In short, they insist that these payments are

shown by the proof introduced upon the trial before the referee, to have been made with moneys received in part, at least during their official term from February 2, 1877, to September 9, 1878, and charged against them in their account, and that they are entitled to credit for so much of the amount paid by Cann as is shown by the proofs to have been received during their term.

The legal proposition contended for by them is undoubtedly sound. (*Stone* v. *Seymour and Bouck*, 15 Wend., 20; *Brulenbecker* v. *Dowell*, 32 Barb., 9; *United States* v. *Jonneay*, 7 Crouch, 57; *Jones* v. *United States*, 7 How., 681.) Now, as to the facts which appellants asume to be established by the proofs. Cann says in his supplimental report of June 9, 1880, which was admitted as evidence in the trial before the referee, without objection from either party: "These payments were made towards completion of the transactions of the former board, and the moneys paid should be credited to them on account of discrepancies arising since September, 1870, and thereafter."

Then follows a statement of the amounts expended or paid into the state treasury, on account of the several funds arising from the sales of the several classes of state lands respectively, and altogether making said aggregate of $8,951 85. Among others the supplemental report shows payments on account of the university fund amounting to $756 37, and a single payment on account of the capitol building fund of $1000, under date of October 5, 1878. The proofs are decisive that on February 2, 1877, deficiencies existed in the accounts of the board of school land commissioners, occurring since September, 1870, in respect to every fund except the capitol building fund, in the aggregate more than sufficient to absorb the whole amount of

Cann's payments in their settlements, if such payments should be so applied.

We have already given the material portions of Cann's sworn statements before the referee in regard to these payments. The payments were made after the official term of the appellants had expired, and after Cann's relation to them, as clerk of the board which they composed, had also cesaed. There is no ground therefore, for the presumption that Cann was acting under their directions as a board in making such payments; nor for the inference that might have been drawn, if the payments had been made during their official term, that they were from funds currently received by and debited to them, and therefore credits in their account.

The facts that they composed the last board of commissioners, and that their accounts exhibited the latest deficiencies during the time from September, 1870, to September, 1878, in view of the further fact that Cann, who made the payments, was clerk of all the different boards which occupied that whole period, and manifestly had the possession and custody of all the funds, or the greater portion of them at least, during that period in which the deficiencies are found to exist, afford but slender ground, in our judgment, upon which to base such an inference. The facts, however, of there having been no deficiency in the capitol building fund prior to February 2, 1877, of the occurrence of a subsequent deficiency of $1124 72, and of Cann having paid $1000 into the state treasury on account of such fund, although after the official term of appellants had expired and his own relation to them as clerk of the board, which they composed, had ceased, have been strongly pressed by appellants, as showing that such sum of $1000, at any rate, belonged in that fund, and should therefore have been al-

lowed as a credit to appellants against the amount of such deficiency with which they were charged. If these facts stood alone they would perhaps warrant the conclusion contended for by the appellants.

But, in the same supplemental report which shows this payment, Cann says, as we have already seen, that these payments should be credited against "any discrepancies in the accounts of the board arising since September, 1870." The statements in this report are evidence in the case. In his testimony before the referee, Cann states explicity that no portion of these payments came out of the university fund, and yet they were made on account of that fund to the extent of $756 37. Immediately following this statement, and in reference to these same payments shown by his supplemental report, he says, "It was moneys paid in for lands that did not accrue to the state." Under the law, the board of commissioners were required to pay into the state treasury the proceeds of the sales of the ten sections granted to the state to aid in the erection of public buildings, to create a capitol building fund, but in all other cases the board retained the custody and management of the proceeds of state lands made by them under the authority and direction of legislative enactment. (Title V., chap. 29, Miss. Laws.)

Unless Cann had this distinction in his mind, and intended to state that the funds out of which these payments were made did not arise from the sales of such ten sections of land donated towards the erection of public buildings by the state, we are at a loss to comprehend his meaning. But let this be as it may, his testimony does show most implicitly and unequivocally that the portion of these payments which he attempted to appropriate to the account of the university fund, amounting to $756 37, did not arise from the sales of the university lands, and consequently did not

belong to that fund.    The greater part of this amount was
paid into the state treasury only two days after the payment
on account of the capitol building fund, and in the absence
of any pretense of mistake or offer of explanation on Cann's
part, in reference to his misapplication of the public funds
in his hands, the inference from the fact of his payment on
account of the capitol building fund that the money used in
making such payment properly belonged in such fund, is
very slight, indeed.    Cann also testifies, as we have seen
from the citation from his evidence, "I still owed the state
the sum of $8,951 85, because I had the money, and my
books showed it, after 1870."    Evidently, when Cann made
these payments he regarded himself as the real delinquent
and recognized his obligations to satisfy the deficiencies in
the accounts of the board during the entire period he
was acting as their clerk, to the extent, at least, his books
showed he had received the money from the sales of state
lands, and had not paid it over.    And he plainly made these
payments to cover balances against himself appearing, as he
testifies, upon his own books.    He makes no distinction on
account of the changes in membership in the board of com-
missioners during his own term as clerk thereof, in his tes-
timony.    If his intention could be deemed of any moment
in the controversy between the different sets of commission-
ers, we think it quite clear that his purpose in making the
payments was to settle all the discrepancies in the accounts
of the board from the beginning of his own term as clerk,
without regard to the changes which occurred in the mem-
bership of that body during that term, or to the individual
liability of any person besides himself.

Upon this evidence, the able and learned referee failed to
find as a fact that these payments, or any portion of them,
were made out of funds received during the term of the ap-

pellants, from February 2, 1877, to September, 1878, or any other facts entitling them to be credited with any portion of it upon their accounts during said term. This is the most favorable light for the appellants in which the matter can be put, and it is claimed by them that the court below erred in refusing to set aside the report on this ground.

We do not think the proofs established the fact that any portion of the money paid by Cann was received during such official term of the appellants, or that they established any other fact entitling the appellants to an equitable application of the same upon their accounts for that term. The preponderance of evidence appears to us to be upon the other side, and we think fully sustains the referee's conclusion.

The only remaining objection presented in the brief of the appellants is, in substance, that the complaint charges them with receiving large sums of money and converting the same to their own use, and applying it to uses not allowed by law, while the testimony on the part of the respondent tends to show only that Cann, as clerk and custodian of the funds of the board, received more money than he accounted for, and consequently that there is an entire failure of proof. But it seems quite clear to us that the gist of the suit is a failure on the part of the appellants to account for and pay over money received by them which belongs to the state. These allegations are directly made in the complaint, and are entirely distinct from the allegation of conversion by appellants, and show a good cause of suit. The latter allegation should be treated as surplussage.

The decree of the circuit court is affirmed with costs to the respondents.