CAROLINE LAMBRECHT *vs.* THE STATE OF MARYLAND, use of N. RUFUS GILL, Administrator of HENRY M. WILSON.

*Liability of a Testamentary Bond for a Debt due by the Executor to the Testatrix, and given in by him under Art. 93, sec. 224, of the Code.*

S. W. died in 1875, leaving a will, bequeathing $500 to H. W., and appointing S. L. her executor, who took out letters, and C. L. was one of the sureties on his testamentary·bond. H. W. died without having received the bequest, and G. was appointed her adm'r. S. W's estate consisted of sundry articles of household furniture, valued at $191, and a debt due her from S. L., amounting to $2500. S. L. gave in the claim against himself as a debt due the testatrix as required by Art. 93, sec. 224, of the Code. In an action on the testamentary bond of S. L., ex'r, by G., adm'r of H. W., it was HELD:

That under Art. 93, sec. 224, of the Code, the debt of S. L. to the testatrix should be treated and accounted for, as so much money in his hands, without regard to the question whether he was, or was not able to pay it; and that the bond was responsible for the debt.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exceptions.*—At the trial the facts stated in the opinion were admitted. The defendant, Lambrecht, then offered to prove that Sidney C. Long was insolvent as stated in the opinion, and evidence to this effect was offered subject to the exception of the plaintiff, as follows:

That at the time he took out letters, Sydney C. Long was largely indebted and unable to pay his debts, some of

which were judgments and could not be made. That he had had no money or cash anywhere, since his letters were granted; that he had no property in Maryland; that he had an undivided share in certain lands in Virginia, which at present could not be sold and had no market value; that he thought his share worth more than enough to pay this one debt of $2500, and that he thought that amount might have been made by execution, and that his co-owners would have given this amount for his share; but that it would not bring enough to pay his other debts.

The defendants then prayed the opinion of the Court:

1. That if the defendant, Long, had, in fact, no money in his hands when appointed administrator, and has had none since, the plaintiff cannot recover.

2. That the effect of Rev. Code, Art. 50, secs. 139–140, is to provide a way in which debts due by an administrator to his decedent, shall be proved against or acknowledged by him, before they are deemed money of the estate in his hands, and after such proof or acknowledgment, to transfer the sum due from himself individually, to himself as administrator, which transfer cannot take place, where, in fact, nothing exists to transfer; that it is proved in this case, that during the continuance of his office as administrator, the defendant, Long, has had no money to be transferred to the estate; that therefore, no transfer took place, there was no money for him to maladminister; the condition of his bond has been performed, and the plaintiff cannot recover in this action.

3. That the effect of this statute is to establish upon the proof or acknowledgment of the debt as therein set forth, the liability of the administration bond *prima facie*, on the ground that the debt is deemed paid, and that this presumption has, in this case, been rebutted by the defendants, by showing total inability to pay on the part of the administrator.

Lambrecht *vs.* The State, use of Gill, Adm'r.

4. That sureties who have bound themselves for the faithful performance of his duties by an administrator, are not liable in an action, for the breach of an alleged duty, which it was, in view of the circumstances, impossible for the administrator to perform, and that as it appears that the defendant, Long, had no money in his hands during the period in which he was administrator, the duty to account could not arise, nor could necessarily resulting failure to account, give the plaintiff any cause of action against the bond, and the plaintiff cannot recover in this action.

The Court, (GAREY, J.,) sustained the plaintiff's exception, ruled out the evidence as to insolvency, and refused the defendants' prayers. To this ruling the defendant, Caroline Lambrecht, excepted ; and the verdict and judgment being for the plaintiff, she appealed.

The cause was argued before BARTOL, C. J., GRASON, ALVEY, and MAGRUDER, J. for the appellant, and submitted on brief for the appellee.

*David Stewart,* for the appellant.

The object of the statute in question in this case is declared as follows :

"The bare naming an executor in a will, shall not operate to extinguish any just claim which the deceased had against him."

By the common law, " if a creditor appointed his debtor his executor, the debt was considered extinguished at law, for the reason that the executor could not sue himself * * * as a consequence of this, it was held that the debt was paid, and was assets in the hands of the executor who owed the money, for which he was as much answerable to the creditors of the testator as if he had actually received that amount in cash from any other person indebted to the estate. (2 *Wills. on Exc'rs,* 1124,

1126, *3rd Amer. Ed.*) At a later period in equity, it became an established rule that an executor should be accountable for the amount of his debt, as assets, not only for the payment of debts, but also for the benefit of residuary legatees and next of kin, still recognizing the principle that the executor has paid to himself the debt due by him to the testator." *Beall vs. Hilliary*, 1 *Md.*, 186, 189.

This, however, was only in equity, and not well settled. To settle this very thing—that the executor should not be excused his debt—and to provide definitely how he should be made to pay it, this statute was passed. It was surely not a part of the object of this statute that the bond should be liable even if the executor could not pay his debt. The presumptions are always against beneficiaries, and in favor of bondsmen. If the Legislature had intended such an extraordinary object, they should have expressly stated it.

Therefore, this case does not involve the object of this statute, nor is the construction including it necessary to the efficacy of the statute.

The construction contended for by the appellee ignores and conflicts with the law of principal and surety which is involved in this case, while that urged by the appellant harmonizes this statute with that law. The obligation and liability of a surety will not be extended further than strictly required by the letter and spirit of the bond. *Fullerton vs. Miller*, 21 *Md.*, 1; *Strawbridge vs. Baltimore and Ohio Railroad Co.*, 14 *Md.*, 366.

In this case, Lambrecht bound herself simply for the faithful performance by Long of his duties as executor, without damage to any one interested. In this case there has been no damage and no breach of duty. The legatee has not received her legacy, but that is not the executor's fault. No executor could have done better. The testatrix left a legacy to be paid out of an uncollectable debt.

If the bond renders it collectable out of the bondsmen's pockets, the legatee is not compensated for damage, but enriched by accident—a new phase of bondsmen's liabilities! It was the executor's duty as executor to give in his debt, and to collect it or pay it if possible, but not if impossible; " no text imposing obligations is understood to demand impossible things." *Lieber's Rule* 3, *Sedwick's Statutes,* 247; *Domat's Rules* 3, 4, 5, *Sedwick's Statutes,* 244; *Anson's Contracts,* 312.

If he could pay it, his duty as executor was to collect it, and to account for it as assets, but if he could not pay it, no such duty could arise—a new phase of bondsmen's liabilities, that they should be liable for the principal's failure to do what was impossible!

If any *devastavit* has been made, it was before the execution of the bond, and not covered thereby, because future acts alone are contemplated.

The construction contended for by the appellee leads to the unjust result, that when a debtor is named executor, and gives bond, no matter what his conduct or how perfect his inability to pay his debts due the testator, his bondsmen are absolutely liable for them. Can it be said that this was *actually* contemplated by the bond? " They are presumed to know the law "—true, the law of principal and surety, and this statute construed in accordance therewith.

The construction contended for by the appellee leads to the illogical and unreasonable result, that we must suppose that as soon as a debt is given in and by mere *fiat* of law, the executor's debt becomes money; whereas, that insisted upon by the appellant is, that the debt becomes money according to the settled principles governing transfers by operation of law.

The theory of transfer by operation of law is this:

" Where a person in one character is debtor, and the same person in another character is creditor, the law

regards the debt as paid by the debtor capacity to the creditor; and this is on the same principle which governs in the case where a man has several capacities, and is found in the possession of property, the law will attach the possession to the capacity in which of right it ought to be held." *State vs. Cheston,* 51 *Md.,* 352, 378; *Kirby vs. State,* 51 *Md.,* 383, 392.

This is just what happens under this statute—the money is transferred from the individual to the executor, and thus becomes assets of the estate. It cannot, of course, be transferred if it does not exist. This is absolutely true in theory and logic. The doubt seems to exist rather in regard to what proof is sufficient to establish inability to pay. It is suggested that this should be simply a matter of fact for the jury, and that the distinction in *Gray vs. Brown,* 1 *Richardson,* 363, referred to by the appellee is unsound.

Another way of putting the same thing is, that the statute raises a presumption that the executor's debt is paid, which may be rebutted by showing that in fact this was impossible. See 51 *Md.,* 392, (*supra.*)

The Court below decided that proof of compliance with the statute is conclusive proof that the debt has been paid, and has become assets. This Court is therefore not called upon to consider the sufficiency of the proof actually offered by the appellant in rebuttal.

Finally, this Court cannot uphold a view of this statute which enriches the appellee, who has no claim except as a beneficiary, out of the pockets of a surety, by making her pay a debt which could never have been recovered from the principal.

*I. Thos. Jones* and *N. Rufus Gill,* for the appellee.

The intention of the Legislature in enacting the law in question, was to avoid the hardship of the common law rule by which the appointment of an executor was held

to be an extinguishment of his debt to the testator, and to absolutely charge him with such debt when ascertained or given in, " in the same manner as if it was so much money in his hands." And as if anticipating some misconstruction of that intention, it is further provided that "on failure, his bond may be put in suit." Can any language be less susceptible to misconstruction ? If he is to account for such debt as so much money on his hands, and upon failure to do so, his bond may be put in suit, what has his individual pecuniary condition to do with the right to so charge and hold him more than as to any other asset which might come to his hands ?

In *Kirby, et al. vs. State, use of Pascault, Adm'r,* 51 *Md.,* 392, this Court has in effect construed sections 139 and 140, Article 50, Revised Code; and in view of that construction, it is submitted that there was no error in the rejection of the appellant's prayers, or in sustaining the objection to her evidence, as to the solvency of the executor Long.

We also refer to *Beall vs. Hilliary,* 1 *Md.,* 186 *and* 189 ; 2 *Williams on Executors,* 1182 *to* 1184, 5*th Ed.; Simmons vs. Gutteridge,* 13 *Vesey,* 261, 263 ; *Berry vs. Usher,* 11 *Vesey,* 87, 90 ; *Flickinger vs. Hull,* 5 *Gill,* 60.

The principles contended for by the appellee have been fully sustained elsewhere in this country, notably in Massachusetts. *Winship vs. Bass, et al.,* 12 *Mass.,* 199, 201, 211 ; *Stevenson, Adm'r vs. Gaylord,* 11 *Mass.,* 256, 266, 269, 270.

But the evidence did not show such insolvency of Long as would sustain the position of the appellant, even if it were true, that proof of that fact would affect the question of her liability. He had property out of which the debt due to the estate of the testatrix could have been made at any time. This debt may have been met though others could not have been. *Gray vs. Brown,* 1 *Richardson,* 363.

BARTOL, C. J., delivered the opinion of the Court.

This suit was brought by the appellee upon the testamentary bond of Sydney C. Long, executor of the will of Sarah J. Wilson deceased, and was tried before the Baltimore City Court, without the intervention of a jury.

The following facts were admitted:

Sarah J. Wilson died in 1875, leaving a will bequeathing $500 to Helen M. Wilson, and appointing Sydney C. Long her executor, who took out letters and the defendant, Caroline Lambrecht, was one of the sureties on his testamentary bond. Helen M. Wilson, the legatee, died without having received the bequest, and N. Rufus Gill is her administrator duly qualified. The estate of the testatrix consisted of sundry articles of household furniture valued at $191, and a debt due her from *Long* her executor amounting to $2500. The executor *"gave in"* the claim against himself as a debt due the testatrix as required by the *Code, Art.* 93, *sec.* 224.

It was admitted that "if, in this case, the debt owing by the executor was in law, cash assets in his hands, there were sufficient assets to pay said bequests, and that the plaintiff was entitled to recover."

The defendant offered evidence, subject to exception, tending to prove that the executor was insolvent at the time he took out letters, and had been so ever since, and had had no funds to pay his debt to the estate, or to pay the legacy ; and offered four prayers claiming exemption from liability of the sureties upon the testamentary bond, by reason of the insolvency of the executor.

The Court excluded the evidence, and rejected the defendant's prayers, and to this ruling the defendant excepted.

The decision of the case depends upon the construction of *sec.* 224, *Art.* 93 of the Code. (Revised Code, Art. 50, sec. 139.) This section provides that: " The bare naming an executor in a will shall not operate to extinguish any

just claim which the deceased had against him; but it shall be the duty of every such executor accepting the trust, to give in such claim in the list of debts; and on his failure to give in such claim" (proceedings are authorized to be taken by parties interested, and also for establishing the claim in case it is contested,) "and if the executor shall give in such claim, or any part thereof be established as aforesaid, he shall account for the sum due, in the same manner as if it were so much money in his hands, and on failure his bond may be put in suit."

The words of the Code just cited appear to be quite plain and free from ambiguity. The same statutory provision is found in the *Act of* 1798, *ch.* 101, *sub-ch.* 8, *sec.* 20. It has been in force ever since that statute was enacted, and this is the first time, so far as we are aware, that its construction has been called in question in the Court of Appeals.

By the common law, as long since settled in England, "if a creditor appointed his debtor his executor, the debt was considered extinguished at law, for the reason that the executor could not sue himself. * * * * * * As a consequence of this it was held that the debt was paid, and was assets in the hands of the executor who owed the money, for which he was as much answerable to the creditors of the testator as if he had actually received that amount in cash from any other person indebted to the estate. At a later period, it became an established rule in equity that an executor should be accountable for the amount of his debt as assets, not only for the payment of debts, but also for the benefit of residuary legatees and next of kin. Still recognizing the principle that the executor has paid to himself the debt due by him to the testator." *Beall vs. Hilliary,* 1 *Md.,* 189.

It was the manifest intention of the Act of 1798, to charge the executor absolutely with the debt which he might owe the testator *as assets* in his hands, and in order to remove all danger of misconstruction, it was provided

that in case of his failure to account for the sum due, in the same manner as if it were so much money in his hands, his bond may be put in suit.

The proposition contended for by the appellant is that the intent and purpose of the statute was simply to place the debt due by the executor on the same footing as debts due the testator from other persons; and as the sureties in the testamentary bond cannot be held liable for debts due from strangers which are *desperate,* and which the executor may be unable to collect, by the exercise of due diligence in the same manner, where the executor is insolvent and unable to pay his debt, it is argued, that it would be unreasonable, and contrary to the spirit and intent of the law, to hold the sureties upon his bond answerable therefor.

We have carefully considered the very able and ingenious argument of the appellant's counsel, and have examined the authorities cited by him; but are unable to concur in the conclusions reached by him. His argument is based on the proposition that the real intent of the statute, and its whole effect is to apply the well known doctrine of the law, by which it is established if a person is in one capacity a debtor, and the same person, in another capacity, is creditor entitled to receive the sum due, the debt is regarded in law as paid; and the money is *by operation* of *law* in his hands, in the capacity in which he is entitled to receive it. As when an executor, who has closed his administration, is appointed guardian of a legatee or distributee, and in the latter capacity is entitled to receive the money in his own hands, the same is held to be paid, and he is chargeable therefor as guardian; the fund being in his hands in the latter capacity by operation of law. It is argued that this result does not take place, or in other words, that the transfer of possession by operation of law does not take effect, where there is, in point of fact, no fund in the hands of the party to be transferred, at the time when his new capacity begins.

Without now deciding upon this distinct proposition, it is clear that the effect of the statute under consideration does not depend upon the doctrine of transfer by operation of law. Its language is plain and explicit, and must be construed according to its plain purport and meaning.

The Legislature did not intend to open the door to the inquiry whether the executor has the means and ability to pay his debt, but by express words declares that in all cases his debt shall be treated and accounted for " *as if it were so much money* in his hands;" and this, without regard to the question whether he is, or is not able to pay it;—a question which in most instances, it would be difficult, if not impossible for the parties in interest satisfactorily to investigate or to settle.

By the express words of the Code, the bond is declared to be responsible for the debt of the executor, as if it were so much money in his hands; and the sureties, when they entered into the bond, must be held to have assumed such responsibility. The language of the Code in this respect is so plain as to render it unnecessary to refer to any authorities in support of the construction which we have placed upon it. Nevertheless, we may refer to *Stevenson, Adm'r vs. Gaylord,* 11 *Mass.,* 256, and *Winship vs. Bass,* 12 *Mass.,* 199, (in which the opinion was delivered by Ch. J. Parker.)

In those cases the construction of the statute of Massachusetts was considered, its language was by no means so explicit as the provision of our Code ; and it was held that for the debt due by the executor to the testator, the testamentary bond was responsible.

In our judgment the provision of the Code is susceptible of but one construction, and we are of opinion there was no error in the ruling of the City Court.

The judgment will therefore be affirmed.

*Judgment affirmed.*

(Decided 22nd July, 1881.)