[No. 15215.    Department One.—January 5, 1895.]

## GEORGE TREWEEK, Respondent, *v.* WILLIAM H. HOWARD et al., Appellants.

Bond of Executor—Suretyship—Guaranty—Demand and Notice.— Whether the bond given by sureties for the faithful discharge of the duties of an executor is to be regarded as a contract of suretyship or a contract of guaranty, the sureties are not entitled, under the Civil Code, to insist upon a demand upon the executor and notice of his refusal to discharge his obligations as executor, but are liable for his default immediately thereupon without demand or notice.

Id.—Pleading—Counts—Reference to Facts Stated in First Count.— In an action against the sureties upon the bond of an executor, who has failed to pay over the money distributed by order of the court to the legatees and distributees under the will, where the plaintiff sets out fully in the first count of the complaint all the facts relating to the administration, and the decree of distribution, and the nonpayment of the amount adjudged to be paid to the plaintiff, and in subsequent counts based on the assignment to the plaintiff of the demands of other distributees, instead of stating at length the several proceedings had during the course of administration up to the decree of distribution, refers to certain subdivisions of the first count, and states that the plaintiff repeats and alleges all of the matters and things set forth and alleged in such subdivisions, and prays that the same be taken and deemed a part of the cause of action as though therein set out at length, such reference is sufficient, and it is unnecessary to repeat at length such facts in each of the succeeding counts of the complaint.

Id.—Defense—Fault of Executor.—It is not a defense available to the sureties upon the bond of an executor that the executor never received in fact any moneys belonging to the estate of the decedent, and that he, as agent of the decedent, during his lifetime, received, appropriated, and embezzled the moneys which he returned in the inventory as be-

ing in his hands, whereas he was then in fact insolvent, and not able to pay the money, of which fact the sureties were ignorant until after the decree of distribution, and that plaintiff and his assignors were cognizant of all the facts at a date subsequent to the decree of distribution.

ID.—EXECUTOR REQUIRED TO REPORT DEBT DUE FROM HIM AS MONEY.— The law requires an executor to treat a debt or demand due from him to the decedent from the time it becomes due as so much money in his hands, and to report it as such; and the sureties upon his bond are presumed to have signed the bond in view of this requirement of the law, and they become liable for the amount of the debt as money in the hands of the executor.

ID.—DECREE OF DISTRIBUTION—SETTLEMENT OF EXECUTOR'S ACCOUNT— CONCLUSIVENESS UPON SURETIES—FRAUD.—The decree of distribution of an estate, and the order of the superior court passing upon and proving the account of an executor, in the absence of fraud, are binding upon the executor and his sureties, although the sureties are not parties to the proceeding, and an embezzlement of money of the decedent by the executor, during the lifetime of the decedent, is not such fraud as entitles the sureties to attack the decree of distribution.

ID.—IGNORANCE OF INSOLVENCY OF EXECUTOR.—The fact that the executor was insolvent, and that the sureties were not aware of that fact, nor of his indebtedness to the estate at the time when they became sureties, cannot avail to relieve them of their responsibility; nor can the representations of the executor as to his financial position excuse them from liability.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Henry P. Bowie,* and *James L. Crittenden,* for Appellant.

The complaint is defective, in failing to allege a demand upon the principal and default by him, as the sureties were only liable in the event of their principal's default, and were entitled to be notified of it before suit. (*Pierce* v. *Whiting,* 63 Cal. 538; *Morgan* v. *Menzies,* 60 Cal. 341.) The second, third, and fourth counts were defective, in that they failed to allege all the facts requisite, and merely referred to the first paragraph. Each count must of, in, and by itself contain a clear and positive allegation of the material facts necessary to constitute a cause of action. (*Kreichbaum* v. *Melton,* 49

Cal. 55; *Haskell* v. *Haskell,* 54 Cal. 262; *Loup* v. *California S. R. R. Co.,* 63 Cal. 100; *Pennie* v. *Hildreth,* 81 Cal. 127.) The sureties upon an executor's bond can impeach and avoid the decree of distribution fraudulently procured by the executor. (*Annett* v. *Terry,* 35 N. Y. 259; *Douglass* v. *Howland,* 24 Wend. 35; *Baggott* v. *Boulger,* 2 Duer, 160; *Hayes* v. *Seaver,* 7 Greenl. 237; *Tracy* v. *Goodwin,* 5 Allen, 411; *Heard* v. *Lodge,* 20 Pick. 58; 32 Am. Dec. 197; *Irwin* v. *Backus,* 25 Cal. 219; 85 Am. Dec. 125; *McClellan* v. *Downey,* 63 Cal. 522; *Schofield* v. *Churchill,* 72 N. Y. 565; *Casoni* v. *Jerome,* 58 N. Y. 316; *Gerould* v. *Wilson,* 81 N. Y. 578; *Harrison* v. *Clark,* 87 N. Y. 576; *Chaquette* v. *Ortet,* 60 Cal. 595; *Braiden* v. *Mercer,* 44 Ohio St. 339; Brandt on Suretyship, 532.) The jurisdiction of courts of equity to set aside decrees for fraud, particularly applicable to decrees of probate courts. (*Dean* v. *Superior Court,* 63 Cal. 477, 478; *Larue* v. *Friedman,* 49 Cal. 278; *Baker* v. *O'Riordan,* 65 Cal. 368; *Johnson* v. *Waters,* 111 U. S. 667; *Hunt* v. *Fisher,* 29 Fed. Rep. 806, and cases cited; *Saxton* v. *Chamberlain,* 6 Pick. 426; *Paine* v. *Stone,* 10 Pick. 76; *Reed* v. *Hazleton,* 37 Kan. 321; *et vide Estate of Cahalan,* 70 Cal. 604; *Leach* v. *Buckner,* 19 W. Va. 47.) As to the general principle of equity jurisdiction to set aside decrees of courts obtained by fraud or collusion. (*Marine Ins. Co.* v. *Hodgson,* 7 Cranch, 332; *Lapham* v. *Campbell,* 61 Cal. 298; *California Beet Sugar Co.* v. *Porter,* 68 Cal. 373; *Mastick* v. *Thorp,* 29 Cal. 444; *Hayden* v. *Hayden,* 46 Cal. 339; *Dobson* v. *Pearce,* 12 N. Y. 156; 62 Am. Dec. 152; *Ruff* v. *Doty,* 26 S. C. 173; 4 Am. St. Rep. 709; *United Lines Tel. Co.* v. *Stevens,* 67 Md. 156.) In every case decided by the supreme court of the state of California where the principle is laid down that the default of the principal fixes the liability of his surety it appears distinctly and affirmatively that the money had actually come into the principal's hands after the sureties had signed the bond, and that there was no fraud or collusion. (*Estate of Aveline,* 53 Cal. 260; *Chaquette* v. *Ortet,* 60 Cal. 599; *Irwin* v. *Backus,* 25 Cal. 219; 85 Am.

Dec. 125; *Lacoste* v. *Splivalo*, 64 Cal. 35; *McClellan* v. *Downey*, 63 Cal. 520; *Murdock* v. *Brooks*, 38 Cal. 596.) The sureties are entitled to stand upon the precise terms of the bond; their obligation being *strictissimi juris*. (*Lacoste* v. *Splivalo*, 64 Cal. 35; *Weir Plow Co.* v. *Walmsley*, 110 Ind. 242; *San Jose* v. *Welch*, 65 Cal. 358; *Brown* v. *Lattimore*, 17 Cal. 93; *United States* v. *Gawthorne*, 3 Saw. 425.)

*Stanly, Hayes, McEnerney & Bradley,* and *Columbus Bartlett,* for Respondent.

No demand upon the sureties was necessary after the default of their principal. (*Chaquette* v. *Ortet*, 60 Cal. 599; *Coburn* v. *Brooks*, 78 Cal. 447, 448; *Monterey* v. *McKee*, 51 Cal. 255; *San Francisco* v. *Brader*, 50 Cal. 507.) Passing these considerations the decree settling the first account of the executor and distributing to the plaintiff and his assignors the respective amounts sued for is final and conclusive, not only as against the executor, but also against his sureties, the cross-complainants and defendants herein, both as to the money being in the hands of the executor and as to the right of the distributees thereto, and, upon the failure of the executor to pay the amount to the distributees, the liabilities of the sureties attached, and they cannot go behind the decree or order to inquire into the existence of the facts on which it was based. (Code Civ. Proc., secs. 1447, 1637, 1649; *Irwin* v. *Backus*, 25 Cal. 214; 85 Am. Dec. 125; *Fox* v. *Minor*, 32 Cal. 120; 91 Am. Dec. 566; *Murdock* v. *Brooks*, 38 Cal. 601; *Brodrib* v. *Brodrib*, 56 Cal. 565; *Kelly* v. *West*, 80 N. Y. 145, 146; *Harrison* v. *Clark*, 87 N. Y. 575, 576; *Chaquette* v. *Ortet*, 60 Cal. 595; *Stovall* v. *Banks*, 10 Wall. 588; *Ralston* v. *Wood*, 15 Ill. 170; 58 Am. Dec. 604; *Xander* v. *Commonwealth*, 102 Pa. St. 434; *Banks* v. *Speers*, 97 Ala. 560; *Gottsberger* v. *Taylor*, 19 N. Y. 150; *Schofield* v. *Churchill*, 72 N. Y. 569.)

The COURT.—This is an action to recover from the defendants the sum of ten thousand dollars upon the

official bond of defendant Bowman, executed by him as principal, and by the other defendants as sureties for the faithful discharge of the duties of said Bowman as executor of the last will of Nicholas Treweek, deceased.

The cause was tried by the court without the intervention of a jury, and written findings filed, upon which judgment was entered in favor of plaintiff for ten thousand two hundred and sixty dollars and sixty cents, interest and costs.

The sureties, Howard and Brittan, appeal from the final judgment and from an order denying their motion for a new trial. Defendant Bowman made default.

There were four counts in the second amended complaint. Defendants Howard and Brittan demurred to each of said several counts separately, upon various grounds, among which were, as to each and every of them, that they failed to state facts sufficient to constitute a cause of action; and, as to the second, third, and fourth counts, that said complaint failed to allege a demand by the plaintiff or his assignor upon the defendant Bowman, and the default of said Bowman prior to a demand upon the defendants Howard and Brittan, the sureties of said Bowman.

The following synopsis of the complaint will serve to an understanding of the points made on demurrer:

The first count thereof alleges in apt terms the death of the testator, Nicholas Treweek, the admission of his will to probate, the grant of letters testamentary to the defendant Bowman, upon his taking the oath required by law and filing a bond with sufficient sureties in the sum of thirty-four thousand dollars, the filing of the bond (which is set out in full in the complaint, and is in the ordinary form) with the defendants Howard and Brittan, as sureties thereon, the taking of the oath of office by Bowman, as required by law, issue of letters testamentary, etc., to said Bowman, which remain unrevoked, etc.

That Bowman, as such executor, immediately after the issuance of such letters, received and has in his

possession as executor more than sixteen thousand dollars of money belonging to the estate.

That on or about January 3, 1884, the executor presented and filed his final account, with a petition for the distribution of said estate, in which account he charged himself with eighteen thousand three hundred and five dollars and twenty-three cents, less expenses and commissions, leaving a balance of fifteen thousand dollars subject to distribution.

January 15, 1884, by an order and decree of the superior court, the final account was allowed and settled, and the executor adjudged to have in his hands, and be chargeable as such, for said fifteen thousand dollars, which by said decree was distributed, and the executor adjudged to pay to plaintiff two thousand five hundred dollars.

That thereafter plaintiff demanded payment thereof from the executor, which he has neglected and refused to pay; that thereafter plaintiff informed the other defendants of such demand and refusal, and demanded from them, and each of them, payment, which they have neglected and refused to make, etc.

The remaining three counts of the complaint are based on the demands of John Treweek, Jane Pender, and Elizabeth West, respectively, who were legatees and distributees of like amounts under the will and decree of distribution, and who had assigned their claims to plaintiff before suit brought.

In said last three counts the pleader, instead of stating at length the several proceedings had up to the decree of distribution, made use of the following language, repeating the same substantially in each count, viz: "The plaintiff here repeats and alleges all the matters and things set forth and alleged in the subdivisions of this second amended complaint, numbered 1, 2, 3, 4, and prays that the same be taken and deemed a part of this cause of action the same as though herein set out at length."

The several counts then contain averments as to the

decree of distribution to the legatees severally of two thousand five hundred dollars each, as in the first count, except as to the names of the several legatees; that defendant Bowman has not, nor have the other defendants, paid the same or any part thereof; that demand of payment of said sum has been made from the defendants and each of them, and that they still fail and refuse to pay.

The several counts then aver an assignment of the demands by the several legatees and distributees to plaintiff.

The contention of appellants in support of the demurrer to the complaint is twofold.

1. That the complaint failed to allege a demand by plaintiff or his assigns upon Bowman, and the default of said Bowman prior to a demand upon or notice to the defendants Howard and Brittan, who were merely sureties of said Bowman, and only liable in the event of his default.

2. That the second, third, and fourth counts of the complaint were each defective in not stating the essential facts constituting the causes of action otherwise than by a mere reference to paragraphs 1, 2, 3, 4 of the first count.

As to the first point, it may be said that much of the difficulty and confusion involved in the proposition arises from grouping together guarantors and sureties, and attempting the difficult task of a general definition applicable to both.

Baylies, in his work on Sureties and Guarantors, at section 1, says: "In fact, it is impossible to frame a definition of either term which will clearly distinguish the one contract from the other, and still be in harmony with the *dicta* in the many cases in which courts have attempted, by the application of some general rule, to bring a contract which might equally well be classed with either," etc.

The words surety and guarantor are often used as

synonymous terms, but they are not so in fact. Both are bound for another person.

A surety is, however, usually bound with his principal by the same instrument, executed at the same time and on the same consideration.

Our Civil Code (sec. 2831) defines a surety as follows: "A surety is one who, at the request of another, and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person, or hypothecates property as security therefor."

The same code also provides (sec. 2844) that "a surety has all the rights of a guarantor, whether he becomes personally responsible or not." This cannot include the right to demand or notice, for the reason that, under section 2807, "a guarantor of payment or performance is liable to the guarantee immediately upon the default of the principal, and without demand or notice."

Cases often occur in which it is difficult to determine whether a given contract is one of surety or of guaranty, and it is believed the object of the code was to place the contract of guaranty on the same plane with that of surety by dispensing with the necessity of demand and notice in the former, as the courts in a majority of instances have in the latter. *Coburn* v. *Brooks*, 78 Cal. 443, and *Chafoin* v. *Rich*, 77 Cal. 476, have settled the doctrine in this state that no demand or notice is necessary to fix the liability of a surety, except in cases where such demand and notice are expressly required by the language of the contract.

It follows that, conceding that the complaint failed to properly aver demand and notice, it was immaterial, and hence that the first contention of appellants cannot be maintained.

2. It was unnecessary to repeat at length in each of the succeeding counts of the complaint the facts stated in the first count and leading up to the decree of distribution.

By the language used in each count, and the prayer that they be deemed and taken a part of the cause of action, they were made a part thereof (as is often done in the case of exhibits) as effectually as though restated in full.

The practice has become quite prevalent, and, where the reference to a preceding count is definite and certain, as in this case, there seems no serious objection to it.

In the cases cited by appellant there was, with one exception, no reference to or adoption of the previous allegations, and hence the counts were held defective. In one of them (*Haskell* v. *Haskell*, 54 Cal. 262) it was said, after referring to the fact that marriage, residence, etc., were not alleged in the second count of the complaint: "Nor is there any reference in it to the allegation in the first count as to such marriage or residence"; and again: "Treating the allegations in the first count as to marriage and residence as mere matters of inducement, they should have been repeated or referred to in the subsequent count, and the omission to either repeat or refer to them is fatal."

In *Pennie* v. *Hildreth*, 81 Cal. 127, which is the exception referred to, there is language deprecating this method of pleading, but it was not necessary to the determination of the case, and may be regarded as *obiter dicta.*

We think the rule enunciated by McFarland, J., in his dissenting opinion in the same case and in the latter case of *Green* v. *Clifford*, 94 Cal. 49, to be the correct one.

The other objections to the complaint are unimportant, and the demurrer was properly overruled.

It is further contended by appellants that the court erred in sustaining plaintiff's demurrer to the defendant's cross-complaint, and in refusing to allow and in excluding any and all evidence to sustain defendant's fifth defense.

These errors are assigned separately, but, as they

involve the same question, and as the fifth defense set out in the answer and the cross-complaint are substantially the same, we shall consider them together as appellants have argued them.

Briefly stated, the allegations of the fifth answer and cross-complaint are:

1. Bowman, as executor, never received any moneys belonging to the estate of Nicholas Treweek.

2. That Bowman, as agent of Treweek during the lifetime of the latter, received, appropriated, and embezzled the moneys which he fraudulently returned in his inventory.

3. Said Bowman was insolvent from the time of such embezzlement up to suit brought.

4. The money pretended to be accounted for by Bowman and included in decree of distribution was embezzled by him in 1878, while agent of testator, and he was insolvent, and by reason thereof never able to repay it.

5. Treweek died more than four years after the embezzlement.

6. Bowman induced the sureties to go upon his bond by false and fraudulent statements whereby they were induced so to do, and to cover up his embezzlement, and to promote the interest of plaintiff and his assignors at the expense of defendants, and to deceive the court, and to have made and entered a fraudulent decree of distribution, filed a false account stating he had fifteen thousand and ten dollars in his hands as executor, which he knew was false, whereby the court was imposed upon and induced thereby to approve the same and decree a distribution.

7. Defendants here knew nothing of these facts, or of any fraud of Bowman, or of his objects or purposes.

8. The plaintiff and his assignors knew all of the foregoing facts and of all the fraudulent acts of Bowman in 1885.

9. Plaintiff and his assignors, with intent to defraud the defendants, pretend and claim that said defendants

are sureties on the bond and liable to pay said fifteen thousand dollars by virtue of the decree of distribution, and that the assignments to plaintiff were with a view to defraud defendants.

10. The time for modifying or setting aside the decree of distribution or to appeal therefrom has expired, and defendants were not parties thereto.

11. Defendants received no money or consideration for becoming sureties, and believed Bowman to be honest and acting in good faith, and that no money ever came into Bowman's hands as executor; the testator had no money at the time of his death, and the executor imposed upon them, the court and the community, pretended to have funds of the estate, when in fact there were no funds in such estate, and he had none, either of his own or belonging to such estate.

12. Plaintiff is seeking by this action at law to fraudulently avail himself of Bowman's wrongful acts, and recover from them.

13. Defendants had no knowledge or means of knowledge of Bowman's wrongful acts until 1885, when they communicated all the facts to plaintiff and his assignors.

14. That by reason of the matters stated plaintiff is guilty of fraud in seeking to recover.

15. Bowman was not, as executor, accountable to the estate or to plaintiff for the fifteen thousand dollars so embezzled by him, and it was not collectible by him by reason of his insolvency before, at the time of, and after the death of said Nicholas Treweek, by reason whereof, without any fault in him as executor, he could not collect it from himself as an individual.

Sureties are entitled to stand upon the precise terms of their contract, and in the present case the bond is limited to the duties cast upon the principal, and the liabilities of the sureties cannot be extended. (*Lacoste* v. *Splivalo*, 64 Cal. 35; *San Jose* v. *Welch*, 65 Cal. 358; *Brown* v. *Lattimore*, 17 Cal. 93; *United States* v. *Gawthorne*, 3 Saw. 425.)

The condition of the bond in this case is as follows:

"Now, therefore, if the said Arthur W. Bowman, as such executor, shall faithfully execute the duties of the trust according to law, then this obligation shall be void, otherwise to remain in full force and effect."

The decree of distribution entered in the superior court, and the order of such court in passing upon and approving the account of the executor, were, in the absence of fraud, binding upon the executor and his sureties, although the latter were not parties to the proceeding. (*Irwin* v. *Backus*, 25 Cal. 214; 85 Am. Dec. 125; *McClellan* v. *Downey*, 63 Cal. 520; *Chaquette* v. *Ortet*, 60 Cal. 595; *Fox* v. *Minor*, 32 Cal. 112; 91 Am. Dec. 566; *Murdock* v. *Brooks*, 38 Cal. 596; *Brodrib* v. *Brodrib*, 56 Cal. 563.)

The question remains, Is there any such fraud charged in the fifth defense and cross-complaint as entitled the defendants here to attack the decree of distribution?

The *gravamen* of the charge of fraud is that Bowman, the executor, had the money in his hands, had embezzled it in the lifetime of the testator, concealed this fact from the sureties, led them to believe, and they did believe until May, 1885, that he was solvent; that they knew nothing of the facts as to such indebtedness or embezzlement until the last-named date, and that plaintiff and his assignors have been cognizant of all the facts since said date.

This was subsequent to the decree of distribution which was entered January 15, 1884.

The facts charged do not constitute such fraud as entitles the sureties to attack the decree of distribution.

Much controversy had existed as to the extent of the liability of an executor and his sureties for debts and demands due, or to become due, from him to the testator of the estate which he represented. Our Code of Civil Procedure, with a view, as may be supposed, of setting all such questions at rest, has provided (sec. 1447) as follows: "The naming of a person as executor

does not thereby discharge him from any just claim which the testator has against him, but the claim must be included in the inventory, and the executor is liable for the same, as for so much money in his hands, when the debt or demand becomes due."

Thus, it will be seen, the law treats a debt or demand due from the executor from the time it becomes due as so much money in his hands.

This debt was due, as is shown by the pleading, long before the death of the testator, and hence was properly included in the inventory as money in the hands of the executor.

The law required him to so report it, and had he failed to do so, and taken the oath required of him by section 1449, he would have been guilty of perjury.

The sureties are presumed to have signed the bond in view of the law as it existed, and are as liable as they would have been had section 1447 been incorporated in the bond.

This debt was as money in the hands of the executor, and, as such, was a part of the estate for the due administration of which the sureties became liable, just as they did for the residue thereof.

The poverty or riches of their principal, the condition of the estate, where and how invested, were proper subjects of inquiry for the sureties in determining whether or not to become responsible, but cannot be urged as reasons to excuse them from the liability which they assumed.

Nor can the representations of their principal as to his financial position, or his failure so to do, avail the sureties. Should such circumstances prevail to release sureties, it is apprehended few would be bound.

The executor was liable under the law as for money in his hands, and the sureties must be presumed to have known it. Beyond this, and stripped of verbiage and accessories which cannot control in the decision, and the simple fact remains that Bowman was insol-

vent, and the sureties were not aware of that fact, or of his indebtedness to the estate.

The case serves to illustrate the wisdom of Solomon, where he says (Proverbs, xi, 15): " He that is surety for a stranger shall smart for it, and he that hateth suretyship is sure."

The other errors assigned are not important, and do not call for a reversal.

The judgment and order appealed from are affirmed.

Hearing in Bank denied.