Argued 2 October; decided 3 November, 1902.

## MASON'S ESTATE.

### DAVISSON *v.* AKIN.

[70 Pac. 507.]

42  177
45  250
45  253

DEBT OF EXECUTOR AS MONEY IN HAND.

Under Section 1117 of Hill's Ann. Laws, providing that an executor who may accept the trust conferred shall be liable for any claim of the testator against him "as for so much money in his hands," an executor, whether solvent or insolvent, should be charged on the settlement of his final accounts with all debts due from him to the testator as so much money. This rule is not affected by section 1176 under which the executor is to be charged at the appraised value with all the property of the estate that may come into his hands, but not with debts remaining uncollected without his fault, for, on his acceptance of the office, the executor's debt became at once money on hand, and ceased to be either "property of the estate" under section 1176, or a "debt" under section 1177.

From Benton: GEORGE H. BURNETT, Judge.

Final accounting of J. L. Akin, executor of the estate of Peter W. Mason and another. From a decree disallowing certain items, the executor appeals, and M. B. Davisson and another, creditors of the estate, appear as respondents.

AFFIRMED.

For appellant there was a brief over the names of *Weatherford & Wyatt* and *J. H. Wilson,* with an oral argument by *Mr. James K. Weatherford.*

For respondents there was a brief and an oral argument by *Mr. E. R. Bryson.*

MR. JUSTICE BEAN delivered the opinion of the court.

This is an appeal from a decree of the circuit court for Benton County disallowing certain items in the final account of the appellant as executor of the last will and testament of Peter W. Mason and Hannah R. Mason, his wife, deceased, and charging him with the amount of a promissory note executed and delivered by him to Peter W. Mason in his lifetime. Akin was insolvent at the time of his appointment as executor, and has ever since continued in that condition, and wholly unable to pay the note, or any part thereof. The respondents, who are creditors of the estate, contended, and the circuit court held, that, notwithstanding Akin's insolvency, he should be charged in the settlement of his final account with the amount of such note and interest as so much money in his hands. The soundness of this view was the only question argued by appellant's counsel, and is the only one presented for our determination on this appeal. Without further statement of the facts, we shall proceed to its consideration.

It may be stated generally that at common law the appointment by a testator of his debtor as executor operated as a release or extinguishment of the debt, except as to creditors, because his appointment to the office suspends the action for the debt, and a personal right once thus voluntarily surrendered is forever gone: 2 Williams, Executors, 625, 626; 2 Woerner, Am. Law Adm'n (2 ed.), § 311. In some states of this country, however, the equitable rule that the appointment of a debtor as executor does not release the debt has been adopted, and, in the absence of a statute, the doctrine is promulgated that debts due a decedent's estate from the executor or administrator are to be deemed and accounted for by him as so much money in his hands, for the reason, as said by the Supreme Court of Massachusetts, in 1814, in *Stevens* v. *Gaylord*, 11 Mass. 256, where the rule was first announced: "As soon as the debtor is appointed administrator, if he acknowl-

edges the debt, he has actually received so much money, and is answerable for it. This is the result with respect to an executor, and the same reason applies to an administrator, as the same hand is to receive and pay, and there is no ceremony to be performed in paying the debt, and no mode of doing it, but by considering the money to be now in the hands of the party in his character of administrator." See, also, *Winship* v. *Bass,* 12 Mass. 199; *Jacobs* v. *Morrow,* 21 Neb. 233 (31 N. W. 739); *Miller* v. *Irby's Adm'r,* 63 Ala. 477; *Thompson* v. *Thompson,* 77 Ga. 692 (3 S. W. 261). There is some conflict in the authorities, however, as to whether, in the absence of a statute, an executor should be charged for the amount of the debt owing from him to the estate, if he was and is in fact insolvent. See *Leland* v. *Felton,* 1 Allen, 531; *Spurlock* v. *Earles,* 8 Baxt. 437; *Rader* v. *Yeargin,* 85 Tenn. 486 (3 S. W. 178); *Twitty* v. *Houser,* 7 Rich. 153; *State ex rel.* v. *Gregory,* 119 Ind. 503 (22 N. E. 1); *Tracy's Adm'x* v. *Card's Adm'r,* 2 Ohio St. 431; *Wright* v. *Lang,* 66 Ala. 389; *Arnold* v. *Arnold,* 124 Ala. 550 (27 South. 465, 82 Am. St. Rep. 199); *Harker* v. *Irick,* 10 N. J. Eq. 269; *Terhune* v. *Oldis,* 44 N. J. Eq. 146 (14 Atl. 638); *Garber* v. *Commonwealth,* 7 Pa. 265; *Lyon* v. *Osgood,* 58 Vt. 707 (7 Atl. 5).

For the purpose of setting the question at rest, the effect of the appointment by a creditor of his debtor as executor, together with the liability of the executor for a debt due from him to the estate, has been regulated by statute in a majority of the states. The statutes of some declare that the appointment shall not operate to extinguish the debt, "but it shall be assets" in the executor's hands. Under such a provision, the general holding is that a debt due from an executor is placed on the same footing with debts due the estate from other sources, and he and his sureties are only required to account for the actual value thereof: 2 Woerner, Am. Law Adm'n (2 ed.), § 311. Such are the cases of *McCarty* v. *Frazer,* 62 Mo. 263, and *State ex rel.* v. *Gregory,* 119 Ind. 503 (22 N. E. 1), cited by appellant. Other statutes not only provide that the debt shall not be extinguished, but that the executor shall

be liable therefor as for so much money in his hands, and such is our statute. Section 1117, Hill's Ann. Laws, provides that "the naming any one executor in a will shall not operate to discharge such executor from any claim which the testator had against him, but the claim shall be included in the inventory; and if the person so named afterwards take upon himself the administration of the estate, he shall be liable for such claim as for so much money in his hands at the time the claim became due and payable; otherwise he is liable for such claim as any other debtor of the deceased." The language of this section is plain and free from doubt, and the courts, with one accord, hold that under such a statute an executor, though insolvent, is bound to account for a debt due from him to the estate, and shall be charged therewith on settlement of his final account, as for so much money in his hands from the time the claim became due and payable: *Baucus* v. *Stover,* 89 N. Y. 1; *Mc-Gaughey* v. *Jacoby,* 54 Ohio St. 487 (44 N. E. 231); *Treweek* v. *Howard,* 105 Cal. 434 (39 Pac. 20); *Lambrecht* v. *State, to use,* 57 Md. 240. The Supreme Court of New York, in *Baucus* v. *Stover,* 89 N. Y. 1, says: "It was the obvious purpose of the statute not only to save the executor's debt from extinguishment, but, in order to obviate all difficulty, doubt, and embarrassment, to cause it to be regarded as money in his hands. Such is the plain reading of the statute. The language is free from doubt and ambiguity, and needs no construction or interpretation. If it had been intended simply that the debt should be placed upon the footing of any other debt due the deceased, and merely to save it, for what it was worth, from extinguishment, the section could have stopped at the word 'inventory,' and the balance thereof would have been without any purpose or meaning. But it goes further. It not only provides that the debt shall not be discharged, and shall be included in the inventory, but it also provides that the debtor executor shall be liable for the debt as for so much money; and not only that, but that he shall apply and distribute the money in the payment of debts and legacies, and among the next of kin. We perceive no room for doubt. The statute says the debt shall be

treated as money, and the courts have no right to say it shall not be so treated. This construction will not necessarily involve an insolvent executor in hardship and embarrassment. If a debtor unable to pay his debt is named executor, he may decline to accept the office.'' And in California (*Treweek* v. *Howard,* 105 Cal. 434, 39 Pac. 20,) it is said that the statute was passed with a view of settling disputed questions as to the liability of an executor and his sureties for debts and demands due or to become due from him to the testator of the estate which he represented, and under it such debt, from the time it becomes due, is to be treated as so much money in the hands of the executor.

The Supreme Court of Ohio, in speaking on the same subject, says: ''The language includes all executors indebted to their testator, imposes the same duties upon all alike, and applies the same rule to all, without distinction between those that are solvent and those that are insolvent, or on account of any circumstances or condition whatever. If such distinction or any distinction had been intended, it could easily have been made, and would have readily occurred to the legislative body, especially in view of the previous decisions of the court establishing the same rule declared by the statute. The failure to make the distinction suggested would therefore seem to have been intentional, but, if it were not, the courts cannot supply the omission without a manifest encroachment upon the province of the legislative body'': *McGaughey* v. *Jacoby,* 54 Ohio St. 487 (44 N. E. 231). And the Maryland Supreme Court says (*Lambrecht* v. *State, to use,* 57 Md. 240): ''It was the manifest intention of the act of 1798 to charge the executor absolutely with the debt which he might owe the testator, as assets in his hands; and, in order to remove all danger of misconstruction, it was provided that in case of his failure to account for the sum due, in the same manner as if it were so much money in his hands, his bond may be put in suit. * * The legislature did not intend to open the door to the inquiry whether the executor has the means and ability to pay his debt, but by express words declares that in all cases his debt shall

be treated and accounted for 'as if it were so much money in his hands'; and this without regard to the question whether he is or is not able to pay it,—a question which in most instances it would be difficult, if not impossible, for the parties in interest satisfactorily to investigate or to settle.'' It is clear, therefore, that the solvency or insolvency of the executor is, under our statute, an immaterial inquiry, and that on the final settlement of his account he is to be charged with the amount of any debt due from him to the estate as so much cash in hand from the time it became due. And it can hardly be said that this is an unjust or unreasonable requirement. As an executor cannot sue himself, all resort to legal process for the collection of a debt due from him to the estate is cut off by his assuming that office. By a proceeding which the beneficiaries of the estate are powerless to prevent, he has deprived them of the ordinary processes of the law for enforcing the payment of his debt. Having voluntarily taken upon himself the right and duty to demand and receive, and the corresponding duty of paying, it is but a just and legal consequence of his own act that his debt should be conclusively presumed to have been paid and discharged.

Every reason for this doctrine is strengthened when liability on the ground of the executor's insolvency is sought to be evaded. That is a matter which the beneficiaries of the estate are entitled, under every principle of right and justice, to have determined by the ordinary processes of the law in a proceeding where the debtor does not occupy the conflicting relations of a representative of the estate charged with the duty of diligence in its behalf, and a debtor whose interest it would be to avoid payment. An inquiry of that nature in the county court, sitting for the transaction of probate business, would necessarily be attended with innumerable difficulties, and would be an unsatisfactory and imperfect substitute for the remedies ordinarily afforded for the collection of debts. For the purpose of settling all these questions, and obviating the difficulties suggested, the statute has provided, in plain and unmistakable terms, that, if the debtor takes upon himself the administra-

tion of the estate, he shall be liable for any debt due from him, "as for so much money in his hands at the time" it became due and payable. Nor is the effect of this provision modified by those of sections 1176, 1177, Hill's Ann. Laws, that an executor is chargeable with all the property of the estate that may come into his possession, at the value of the appraisement contained in the inventory, and "shall not be accountable for the debts due the estate, if it apper that they remain uncollected without his fault." Debts due from the executor are by force of section 1117, in legal effect, transmuted into money in his hands, and cannot be classed with property of the estate coming into his hands, or with uncollected or uncollectible debts, within the meaning of the section referred to: *McCaughey* v. *Jacoby,* 54 Ohio St. 487 (44 N. E. 231).

Whether the debt of an insolvent executor, converted by the statute into money, for the purpose of administration, stands on the same footing in regard to his sureties as if the executor had actually received so much money belonging to the estate, is a question not presented nor decided by this appeal. We are of the opinion that the executor was properly charged with the amount of the debt due from him to the estate, as so much money, and, as that is the only question for decision, the decree of the court below is affirmed.                                      AFFIRMED.