[Civ. No. 682.   Second Appellate District.—July 14, 1909.]

ELIZA P. ELIZALDE, as Administratrix of Estate of
MARCOS A. ELIZALDE, Deceased, Appellant, v. P. W.
MURPHY, GASPAR O. MARRE, as Administrator
with Will Annexed of LUIGI MARRE, Deceased, A. Mc-
ALLISTER, LUCINDA GRAVES and VICTORIA C.
ELIZALDE, Respondents.

ESTATES OF DECEASED PERSONS—ACTION ON BOND OF FORMER ADMIN-
ISTRATOR—LIABILITY FOR TRUST FUND—PENDENCY OF ACTION.—
Where a fund subsequently claimed to be a trust fund came into
the possession of a former administrator by virtue of his office,
the sureties on his bond are liable to the estate after his death at
suit of a succeeding administratrix, notwithstanding a suit to recover
such fund from the estate was pending at his death.

ID.—DUTY OF ADMINISTRATOR TO REPRESENT ESTATE IN LITIGATION AS
TO TRUST FUND—PENDENCY OF ACTION NO RELEASE OF DUTY.—
Notwithstanding a fund, if shown to be actually held by the de-
cedent in trust for a third party, is no part of the assets of the
estate, and cannot be applied to its debts, and no claim need be
presented to sustain an action therefor, yet it is the duty of the ad-
ministrator to assume that the money in the hands of the decedent
was the property of the estate, and to maintain for the benefit of
those interested therein that the fund belongs to the estate, until
the contrary has been finally determined; and the mere pendency of
an action to enforce a trust fund does not release the duty of the
administrator to maintain such right.

ID.—DUTY OF ADMINISTRATOR AND SURETIES TO ACCOUNT TO SUCCESSOR.—
Since the former administrator received the moneys in the possession
of the testator by virtue of his office, he and the sureties on his
official bond are liable for its safekeeping, and must account for the
same to his successor as part of the assets of the estate, it not hav-
ing been otherwise judicially determined.

ID.—NOTE DUE TO ESTATE—RENEWAL IN NAME OF ADMINISTRATOR CON-
VERSION—INTEREST—GOOD FAITH—FINDINGS REQUIRED.—Upon the
new trial, which must be had by reason of a wrong decision against
the responsibility of the former administrator and his sureties as to
the moneys found in possession of the decedent, *held* that it will
be the duty of the court to find whether the renewal of a note due
to the estate, not collected, in the individual name of the former
administrator, which constitutes a conversion as matter of law, was

converted by him in good faith or in bad faith, as bearing on the question whether he should be charged with interest thereon from the date of such conversion or not.

ID.—DECISION UPON FORMER APPEAL NOT LAW OF CASE—FACTS DIFFERENT.—*Held*, that the decision upon the former appeal, which was based on the insolvency of the maker of the note, is not the law of the case upon the present appeal, upon which the evidence appearing in the record plainly shows that the maker of the note was solvent.

ID.—FAILURE TO FIND UPON MATERIAL ISSUE—DECISION AGAINST LAW.—The failure to find upon a material issue is a "decision against law," which is ground for a new trial, that the court may make a proper finding thereon.

ID.—IMPROPER SPECIFICATIONS OF INSUFFICIENCY OF EVIDENCE.—A specification of insufficiency of the evidence to support the judgment cannot be considered, and, notwithstanding the liberal rules for the construction of specifications, such specifications cannot be construed to include a specification of the insufficiency of the evidence to sustain the decision.

APPEAL from an order of the Superior Court of Santa Barbara County, denying a new trial. S. E. Crow, Judge.

The facts are stated in the opinion of the court.

B. F. Thomas, for Appellant.

W. H. Spencer, and Wm. Shipsey, for Respondents.

TAGGART, J.—This is an action against the sureties on an administrator's bond, by his successor in office, to recover the balance found upon an accounting to be due from said administrator to the estate of the deceased. Plaintiff, being dissatisfied with the amount of the judgment in favor of the estate, appeals from an order of the superior court denying her motion for a new trial. This is the second appeal taken by plaintiff based upon the alleged improper allowance by the trial court of items of credit on behalf of defendants.

On the former appeal (4 Cal. App. 117, [87 Pac. 245]), the judgment of the trial court was reversed because of the improper allowance of two items then before the court, and a new trial ordered. Under the law of the case declared with respect to them, and the failure of respondent to appeal, these two items have passed out of consideration, but two

11 Cal. App.—3

other allowances made on the second trial are claimed by appellant to have been erroneous. One of these (hereinafter spoken of as the Dargie note) was considered by this court. in connection with the findings of the trial court made and the evidence given upon the first trial, and it is contended by respondents that the decision of this court then rendered has become the "law of the case" as to that item also.

. On the new trial, in addition to the findings of formal facts. necessary to the judgment, the execution of the undertaking, relations of the parties, etc., the trial court found that Ernest Graves, as administrator of the estate of Marcos A. Elizalde, deceased, on the twenty-eighth day of May, 1898, filed the last account made by him of his administration of said estate, wherein he charged himself with the sum of $8,142 received, and credited himself with disbursements in the sum of $3,008.50; among the items going to make up the former amount being one as follows: "Money in hands of administrator as per decree of this court, August, 1897, $6,392." This. account of Graves was, by an order of the superior court made July 9, 1898, settled and allowed, as filed, except that an additional allowance of $500 for attorney's fees was made.

It is also found that after the filing of the account of May, 1898, said Graves collected the sum of $405 in rents, and the sum of $157.50 on account of the Dargie note, and paid out on account of disbursements on behalf of said estate the sum of $1,195; the latter sum including the $500 attorney's fees. allowed. From this showing it appears that there is a balance due said estate from defendants of $4,501, whereas the judgment in favor of plaintiff is for only $3,501 and costs.

The finding upon which the court based this reduction of the amount of the judgment is as follows: "Third. That the item of $6,392 contained in the account set forth in paragraph 10 of the complaint herein (the balance on hand from prior account above mentioned) includes the sum of $1,000, to wit, the $1,000 claimed by the defendants to be the property of one Francisco Elizalde, an incompetent person. That. said $1,000 never belonged to Marcos A. Elizalde or the estate of Marcos A. Elizalde." This finding appellant contends: is not supported by the evidence.

It is further found as to this item of $1,000 that the same was money held in trust by Marcos A. Elizalde for the bene–

fit of one Francisco Elizalde, an incompetent person, which after the death of Marcos A. Elizalde came into the hands of said Graves, and was held by him in trust for the benefit of the incompetent and without prejudice to the right of said incompetent or his guardian to take any lawful means for the collection thereof. That an action was brought by said incompetent against Graves as administrator of the estate of Marcos A. Elizalde, deceased, to recover the same and the said action is still pending. That an appeal was taken from a judgment rendered therein, which is referred to as reported in volume 137, California Reports, at page 634, [66 Pac. 369, 70 Pac. 861], and from which it appears· that a judgment rendered against plaintiff in this action as administrator, payable in ''due course of administration,'' was reversed. That this action is still pending in the superior court of Santa Barbara county; that said Graves died pending the appeal, and that plaintiff herein was, on the death of said Ernest Graves, substituted as the defendant in said action. From the decision on appeal it appears that the substitution took place prior to the reversal of the former judgment, and the order made on the appeal is predicated in part at least upon the fact that the change of administrators would make some difference in the judgment that might be entered.

The evidence relating to the $1,000 item shows an acknowledgment in the account of C. A. Thompson, executor of the will of Marcos A. Elizalde, the probate of which was revoked, that he held that sum to be paid to the guardian of Francisco Elizalde, a report by him, accompanying said account, to the effect that the sum of $1,000 was held by Marcos A. Elizalde in his lifetime as trustee under the will of Maria Ignacia Elizalde for the benefit of the incompetent, an order settling said account and directing the executor to pay over to the special administrator of the estate (Ernest Graves) said sum, without prejudice to the right of the guardian of the incompetent to apply for an order directing said sum to be paid over to him by the special administrator, and that the money was received by Graves as special administrator, and retained by him as general administrator of the estate of Marcos A. Elizalde, deceased. In the reports accompanying three several annual accounts filed by Graves as administrator of the estate he reports that an action has

been brought, or is pending, against the estate to recover the said sum, and in the order settling the last account filed by him is contained the recital that judgment had been obtained against him as administrator in favor of said incompetent for $2,109.50. It is stipulated that this judgment was reversed and that the action has never been retried but is still pending in the superior court.

The effect of all this is merely to establish that $1,000 of the estate is in litigation. While, as was said in the department opinion in *Elizalde* v. *Elizalde*, 137 Cal. 634, 642, [66 Pac. 639, 70 Pac. 681], property held by a decedent in trust is not a part of his estate, and cannot be applied in satisfaction of his debts, or form a portion of his estate to be distributed to his heirs, and no presentation of a claim is required before the claimant of such trust property can maintain an action therefor, nevertheless, the administrator of the estate is not released from his duty to maintain the right of the estate to such property until it has been finally judicially determined that it is not the property of the estate.

In considering the question of the superior court having awarded interest on the judgment obtained by the incompetent against the administrator Graves, it is said in the opinion of the court in bank (137 Cal. 638, [70 Pac. 862]) : ''The heirs or executors will take the trust property, and they must settle the accounts of the testator in relation to the trust. They must also see that the property is protected and preserved (Perry on Trusts, 3d ed., sec. 344). It thus becomes the duty of the personal representative to preserve the trust fund, *in common with the other funds which have come into his possession.* . . . The reason is plain. It may often happen that a personal representative takes possession of funds which may be proved to be trust funds without any knowledge that such is the fact. Not knowing the fact, it would be his duty to resist, on behalf of the heirs, legatees and creditors of the estate, any attempt to deprive it of a part of its assets. That is, he is bound to assume for this purpose that the trust fund constitutes a part of the assets of the estate.''

If Graves as administrator had prevailed in the action brought by the incompetent, there is no question that the

fund would have remained a part of the assets of the estate and that defendants would have been responsible for its preservation by him. If Graves had lived and continued as administrator and the action remained pending, as it does, it cannot be doubted that it would have been his duty, as administrator, on behalf of the estate, to continue to defend against the claim. Unquestionably he would have been administering the estate in respect to this fund. No distinction can be drawn between the right of the estate to this fund and its right to any other part of the estate which may have been in litigation when Graves died. If Marcos A. Elizalde was the trustee of the fund under an express trust, his estate was not relieved from liability for the $1,000 by his death. This liability of the estate did not change with the death of Graves, and if it be conceded, as respondent contends, that Graves also became individually liable to the incompetent, this would not release his sureties from the primary obligation incurred by Graves as administrator. To say that Graves was not liable as administrator is to say to the incompetent that his right to have the trust declared was lost by the death of Marcos A. Elizalde. Having received the fund into his possession by virtue of his office, Graves must account for it to his successor as part of the assets of the estate.

This view renders it unnecessary to pass upon appellant's contention that defendants are estopped to deny that there is due to the estate of Marcos A. Elizalde, deceased, from the defendants, the balance reported by Ernest Graves in his last account as settled and allowed by the probate court in its order of July 9, 1898, or by reason of the adjudication of the matter by this order.

While there is some doubt in our minds whether the matter of the Dargie note can properly be considered on the record before us, as the same questions presented in relation thereto must, or, at least, may, arise on the new trial required because of the error of the trial court in allowing the defendants credit for the $1,000 item, we will state our views of the law applicable. The points presented by appellant in regard to this note are: (1) That the finding of the court that Graves was not guilty of negligence in failing to collect this note is not supported by the evidence; and

(2) that the findings show that Graves converted the Dargie note to his own use on April 4, 1894, when he took from Dargie notes in lieu thereof executed to Graves as an individual, and that the intention to appropriate is established by the findings as to Graves' further action, in connection with the notes so made to him as an individual.

No express finding of fact was made by the trial court as to whether or not Graves converted or appropriated the note. Neither does the finding relieving him from negligence clearly cover this matter. This finding is that "Graves, as such administrator, was not guilty of negligence in not collecting the amount due." There is an uncertainty in the context which renders it difficult to determine whether this finding relates to the amount due on the original note or on those given to Graves. Accepting it as relating to the original note, and it was misconduct, rather than neglect, to take the notes in lieu thereof in his own name rather than to collect the note. Considered in connection with the notes "taken in lieu," it is apparent that when Graves invested the funds of the estate in his own name he created the relation between himself and the estate of debtor and creditor to the value of the property taken by him, and as between him and the estate it became unimportant whether he was negligent in collecting these three notes. He was liable to the estate for the property taken whether he collected these notes or not. There is no pretense that there was any necessity for his taking the notes in his individual capacity; there is no evidence that he ever reported the exchange to the court or asked its approval in the six years he lived after the transaction; he never mentioned the notes in any account or report filed by him, and the matter was not brought to the attention of the court until this action was tried. This brings the case directly in line with the facts in *Matter of Bane,* 120 Cal. 533, 538, [65 Am. St. Rep. 197, 52 Pac. 853].)

Upon the new trial there should be a finding of fact on the issue of the appropriation or conversion of the original note by. Graves, as this is a mixed question of law and fact; so, also, in order that the court may determine whether or not the principal sum should bear interest, it is important that the trial court also make a finding of the good or bad faith of Graves in taking the notes in his own name; the latter

finding being necessary to the determination of the right of
the estate to interest, but having no application to the ques-.
tion of the conversion of the principal sum. (*Estate of
Cousins,* 111 Cal. 441, [44 Pac. 182]; *Matter of Bane,* 120
Cal. 536, [65 Am. St. Rep. 197, 52 Pac. 853].)

Respondents object to the consideration of this question on
this appeal upon the grounds: (1) That the decision of this
court on the former appeal has, as to the Dargie note, be-
come the law of the case; (2) that the matter of appropria-
tion and conversion as here presented is a question of law
which cannot be considered on an appeal from an order deny-
ing a new trial; and (3) that there is no specification of in-
sufficiency of evidence in the record which can be considered
to cover the matter.

Negligence becomes a question of law only in the excep-
tional case, and is generally a mixed question of law and
fact, and we think what is said as to the Dargie note in the
decision of this court on the former appeal is of the latter
character. Without examining the record on that appeal,
it appears from the opinion (4 Cal. App. 117, [87 Pac. 245]),
that the finding considered by this court was that "there was
no negligence upon the part of the administrator in his fail-
ure to realize upon this asset," and what was said in the
opinion in this regard was based chiefly upon evidence that
Dargie was at all times insolvent, whereas there is a find-
ing in the record before us that Dargie was at all times
solvent. The facts being dissimilar, it cannot be said the
inference of fact drawn therefrom by the court on that ap-
peal becomes the law of the case here. (*Wallace* v. *Sisson,*
114 Cal. 42, [45 Pac. 1000].)

When considered solely as a deduction from the findings
made by the trial court, the question of appropriation or
conversion is, of course, a mere conclusion of law. While
there are earlier cases cited as holding that an erroneous
conclusion of law from the facts found is a decision against
law for which a new trial has been granted, it is now held
otherwise (*Kaiser* v. *Dalto,* 140 Cal. 167, [73 Pac. 828]),
such a matter being said to be reviewable properly on a mo-
tion under sections 663 and 633a, Code of Civil Procedure,
or by appeal from the judgment. In the case at bar, as in
the case cited (*Kaiser* v. *Dalto*), however, there was a failure

to find upon an issue of fact. In that case this "decision against law" was not especially urged by appellant, while here it comes within one of the grounds mentioned in the motion for a new trial, and though it receives but little attention in the brief, we think it proper for us to consider it. There is also the further distinction between the Dalto-Kaiser case and that before us, the finding there under consideration was not material to the judgment, while here the absence of such a finding precludes the appellant from successfully availing herself either of a motion under section 663, or an appeal from the judgment. The remedy for appellant here is by a retrial of an issue of fact that the court may make a finding thereon.

Under the distinction drawn in *Swift* v. *Occidental M. Co.,* 141 Cal. 161, 166, [74 Pac. 700, 701], the "decision against law" here considered must be classified with those properly reviewable by a motion for a new trial. Says the chief justice, writing the opinion in that case: "An example of the first class (decisions against law reviewable by motion for a new trial) is where the trial court has failed to make any finding upon some material issue. The omitted fact being essential to the judgment, a new trial for the purpose of determining the issue is the appropriate remedy, and the refusal to grant it is reviewable on appeal from the order." This is not a case in which every material issue of fact has been decided in favor of the appellant, and in which, a new trial being clearly ineffective, the only remedy is by motion under section 663, or by appeal from the judgment. (*Sharp* v. *Bowie,* 142 Cal. 462, 467, [76 Pac. 62, 66].) Under such a state of the record, we think it proper for us to resolve such doubts as we have as to the proper practice in favor of a hearing of the question on its merits.

This is rendered all the more necessary by the fact that there appears to be no specification of the insufficiency of the evidence to sustain the decision (findings) of the court under which the matter can be considered. The third specification, which appears to be the one addressed to this matter, makes no reference to any finding, but is stated as follows: "That the evidence is insufficient to justify the decision of

the court in giving the plaintiff judgment for the sum only of $3,501, without interest, as the evidence shows," etc. The "decision" of the court is found in its findings and not in the giving of the judgment. The ground of motion for a new trial based on the sufficiency of the evidence relates to the insufficiency of the evidence to justify the inferences of fact included in the verdict of the jury or "other decision," that is, finding of fact, by the court, and a specification of insufficiency of the evidence to support the judgment cannot be considered. (*Boston Tunnel Co.* v. *McKenzie,* 67 Cal. 485, [8 Pac. 22] ; Code Civ. Proc., sec. 657, subd. 6.) While the more recent decisions of the supreme court have receded from the strictness of the rule as to specifications declared in *De Molera* v. *Martin,* 120 Cal. 544, [52 Pac. 825], and now construe them liberally in favor of the right of the moving party to be heard (*Swift* v. *Occidental M. Co.,* 141 Cal. 161, [74 Pac. 700] ; *American Type Co.* v. *Packer,* 130 Cal. 459, 461, [62 Pac. 744]), it can hardly be said that the rule has been so relaxed as to include the specification before us as a specification of the insufficiency of the evidence to sustain the decision.

The order of the trial court is reversed, and cause remanded for further proceedings in accordance with the foregoing views.

Allen, P. J., and Shaw, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 10, 1909.