[L. A. No. 3020. In Bank.—September 13, 1912.]

ELISA P. ELIZALDE, as Administratrix of the Estate of Marcos A. Elizalde, Deceased, Respondent, v. P. W. MURPHY et al., Appellants.

ESTATES OF DECEASED PERSONS—ACTION FOR ACCOUNTING AGAINST ESTATE OF DECEASED ADMINISTRATOR—STATUTE OF LIMITATIONS—FINDING ON PLEA UNNECESSARY.—An action against the personal representative of a deceased administrator, and the sureties upon his official bond, for an accounting of the property of his intestate, is an action to compel a trustee to give an account of the property held by him in trust and of his administration of the trust, to have that account audited and settled by the court and a balance struck. In such an action the plea of the statute of limitations against various items of the account is not open to the defendants, and a finding on such plea is unnecessary.

ID.—REPUDIATION OF TRUST BY TRUSTEE—KNOWLEDGE OF BENEFICIARY.
In the case of a trust such as this, only an unequivocal repudiation of the trust by the trustee, with knowledge of this brought home to the beneficiary of the trust, could set the statute of limitations in favor of the trustee in motion.

ID.—DUTY OF ADMINISTRATOR TO ACCOUNT.—The duty of the administrator to account is a continuing duty and does not become barred.

ID.—PLEADING—RIGHT TO ACCOUNTING NOT DEPENDENT ON FRAUD—UNNECESSARY ALLEGATIONS OF FRAUD.—The right of the beneficiaries to seek such an accounting does not rest upon and is in no way dependent upon any allegations of fraud or malversation, and the inclusion of such allegations in the complaint does not change the action into one for tort, nor broaden its scope.

ID.—RECITALS IN BOND OF ADMINISTRATOR CONCLUSIVE ON SURETY.—The recital in an administrator's bond that it was given in pursuance of an order of court requiring it is conclusive upon the surety.

ID.—SURETY LIABLE FOR PRIOR BREACHES OF TRUST BY ADMINISTRATOR.—The surety upon the bond of an administrator which is general in its terms, and does not limit his liability to the acts of the administrator after the execution of the instrument, becomes liable for the breaches of trust of the administrator committed prior to his becoming such surety, as well as for those committed subsequent thereto.

ID.—CLAIM AGAINST ESTATE OF DECEASED SURETY—FORM OF CLAIM.—A claim presented by the estate of such intestate, against the estate of a deceased surety on the bond of the administrator, is sufficient in form, to sustain the action for an accounting against the estate of the surety, if it recites that it is for cash due in a specified amount to the claimant by reason of the surety becoming such on the bond of the administrator, and to interest on said sum from a date specified at seven per cent per annum.

ID.—SUFFICIENCY AND PURPOSE OF CLAIM.—A claim against the estate of a deceased person is not required to state the facts with all the preciseness and detail required in a complaint. Its purpose is to advise the party against whom it is presented of its nature.

APPEAL from a judgment of the Superior Court of Santa Barbara County and from an order refusing a new trial. Robert M. Clarke, Judge presiding.

The facts are stated in the opinion of the court.

Wm. Shipsey, and S. V. Wright, for Appellants.

B. F. Thomas, for Respondent.

HENSHAW, J.—Ernest Graves during his lifetime was the administrator of the estate of Marcos A. Elizalde, whose sole heirs at law were his widow Victoria C. and his daughter Elisa P. In July, 1898, the account of Graves as administrator was settled and approved. It showed in his possession funds of the estate to the amount of $4,633.50 above all credits allowed to him. Graves died July 15, 1900. The daughter Elisa P. Elizalde was appointed administratrix of her father's estate, and on April 8, 1901, this action to compel an accounting was instituted against the sureties upon the administrator's bonds given by Ernest Graves. Subsequently Lucinda Graves, as administratrix of the estate of Ernest Graves, was brought in as an additional defendant. Growing out of different phases and branches of the controversy, three appeals have already been taken. They will be found reported in *Elizalde* v. *Murphy*, 146 Cal. 168, [79 Pac. 866]; 4 Cal. App. 114, [87 Pac. 245], and 11 Cal. App. 32, [103 Pac. 904]. This appeal is taken by the defendants, Marre and McAllister, sureties upon the bond of Ernest Graves, deceased, as administrator, from the judgment and from the order denying their motion for a new trial.

A reference to the opinion in 11 Cal. App. 32, [103 Pac. 904], will disclose that there came into the hands of Graves, as administrator, what is known as the Dargie note; that Graves did not collect this note, but did take from Dargie and his wife new notes executed to him, Graves, personally as payee. There was before the appellate court in that case the consideration of the question whether the conduct of Graves amounted to an appropriation or conversion of the original note, and if it did, then the question of the allowance of interest, that court in this connection saying:

"Upon the new trial there should be a finding of fact on the issue of the appropriation or conversion of the original note by Graves, as this is a mixed question of law and fact; so, also, in order that the court may determine whether or not the principal sum should bear interest, it is important that the trial court also make a finding of the good or bad faith of Graves in taking the notes in his own name; the latter finding being necessary to the determination of the right of the estate to interest, but having no application to the question of the conversion of the principal sum. (*Estate of*

*Cousins,* 111 Cal. 441, [44 Pac. 182] ; *Matter of Bane,* 120 Cal. 536, [65 Am. St. Rep. 197, 52 Pac. 853].)''

Before proceeding with the hearing of the questions thus presented, the trial court permitted plaintiff to file certain amendments to her complaint, charging that Ernest Graves, while administrator, mingled the balance of account mentioned in the original complaint and four hundred and twenty dollars subsequently collected by him as rent on part of the estate with his own funds so as to constitute himself in appearance the sole and absolute owner thereof, and used the same for his own personal benefit. A further amendment was permitted charging upon the conduct of Graves in taking notes of the Dargies to himself personally in substitution for the note due to the estate, and with commencing suit in his own name to collect the moneys due upon these notes, the continuance of this suit after Graves's death by Lucinda Graves, administratrix of his estate, and the compromise of this suit for the sum of one hundred and fifty dollars, which sum was paid to Lucinda Graves as administratrix. It is further charged that Graves died insolvent, and it is finally charged that plaintiff did not discover the willful and wrongful commingling of the funds of the estate with the administrator's own funds until a very short time before the filing of the amendment. The amendment was filed March 21, 1910.

Appellants complain that the court did not specifically find upon their plea of the statute of limitations, their plea being that "the recovery of said balance of account and said $420 of rent referred to in said twentieth paragraph of said complaint as amended and each and every item thereof is barred by the provisions of sections 337, 338, and 343 of the Code of Civil Procedure." But as in an action such as this, such a plea is not open to the defendants, a finding was unnecessary. The action was simply an action for an accounting— an action to compel the personal representative of a trustee after his death, and the sureties upon his bond as such trustee, to give an account of the property held by the trustee, and of his administration of the trust, to have that account audited and settled by the court, and a balance struck. (*Osment* v. *McElrath,* 68 Cal. 466, [58 Am. Rep. 17, 7 Pac. 731].) The duty of the administrator to account is a continuing duty and does not become barred. (*Estate of Sanderson,* 74 Cal.

199, [15 Pac. 753]; *Cook* v. *Ceas,* 147 Cal. 614, [82 Pac. 370].) The right of the beneficiaries to seek an accounting does not rest upon and is in no way dependent upon any allegations of fraud or malversation. When those allegations are contained in a bill for an accounting they do not change the bill into an action for tort. (*State* v. *Chadwick,* 10 Or. 423; *Segelken* v. *Meyer,* 94 N. Y. 474.) So in this case the amendments which plaintiff was permitted to file not only did not change the action but did not broaden its scope. It would have been permissible for plaintiff, without amendments, to prove everything which she charged as to the nature of the dealings of the administrator with the estate's property without specific allegations bearing thereon. And, for the reason already indicated, that the action was for an accounting by a trustee, and that the realm of inquiry in such action is limited only by the meaning of the word itself, no plea of the statute of limitations could avail the defendants. "A bill for an account must show by specific allegations that there was a fiduciary relation between the parties or that the account is so complicated that it cannot be taken in an action at law. But no allegation beyond those which establish the fiduciary relation, . . . is necessary." (1 Ency. of Plead. & Prac. 98.) In the case of a trustee, only an unequivocal repudiation of the trust by him, with knowledge of this brought home to the beneficiaries of the trust, could set the statute of limitations in favor of the trustee in motion. (*Fox* v. *Tay,* 89 Cal. 339, [23 Am. St. Rep. 474, 24 Pac. 855, 26 Pac. 897]; *Hovey* v. *Bradbury,* 112 Cal. 620, [44 Pac. 1077].)

For the same reason, that portion of the finding to the effect that plaintiff did not until December, 1909, discover that Graves as administrator had commingled the estate's funds with his own, even if unsupported, has no bearing upon the controversy. For the essential fact to be found by the court upon the question of allowing or withholding interest and compounding the same was whether or not Graves had so commingled the funds, and the evidence upon this point abundantly establishes that he did. The discovery by the present administratrix, then but an heir, of such commingling could not, we say, have any bearing upon this litigation for the reason that if she knew of such conversion she could not have instituted against Graves then administrator an action

therefor.  Her sole right under the circumstances would have been to call the trustee to an account, as here she has done. After the judgment in accounting in her favor then for the first time arises the right to take appropriate proceedings against the administrator to enforce such judgment.  However, it may be added that while the testimony does disclose that the Elizalde heirs—mother and daughter—during the administration of Graves did suspect or think that he was improperly using the moneys of the estate, they had no actual knowledge of such misuse or malversation, and still less could they be charged with holding the conviction that when his account as administrator was settled he would not make good whatever sum was found due to the estate.

Defendants pleaded a release to the administrator Graves executed by the Elizalde heirs.  The court pronounced this release a forgery.  It is unnecessary to discuss the conflicting evidence upon this question, but suffice it to say in pointing out that the finding is sustained by the evidence, that not only do the two heirs positively deny their signatures to the release and the execution of it by them, but upon a previous trial the court found this release to be a forgery, and the defendants acquiesced in the finding to the extent that no appeal was taken by them from the judgment which followed.

Numerous other objections are presented by appellants. For the most part they are based upon the position which appellants take that because of the amendments to the bill charging misappropriations and conversions and commingling of the funds of the estate the cause of action has been changed from the equitable action for an accounting to a legal action in tort.  This position, as we have already said, is untenable. To illustrate without elaboration, it is contended that appellants were entitled to a jury trial because the action was one at law.  It is contended that the court erred in overruling appellants' demurrers because a cause of action for an accounting was joined with a legal action for conversion.  It is contended that the statute of limitations had run in favor of appellants as to certain acts of conversion found by the court. These objections, one and all, have been sufficiently answered by what has previously been said.  Certain other objections, even if containing merit, are of no essential value to appellants.  Thus, the court found that Dargie was solvent.  His

solvency or insolvency had no bearing upon the conduct of
the administrator in his dealings with the Dargie matter, the
taking of new notes in his own name for the old, the collection
of one of these notes at maturity, and his failure to account
to the estate for the proceeds of the collected note, and for
the other notes which he took in his own name personally
as payee. Again it is said that the finding to the effect that
''Ernest Graves has not as administrator advanced to Victoria
Elizalde $3,000 or any sum or anying at all'' is wholly un-
supported. The finding, it is to be borne in mind, is that
Graves did not *as administrator* make any such advances.
The evidence does in fact show that Graves did pay over to
Mrs. Elizalde certain sums of money. All of these payments
but three were made before Mr. Graves became administrator,
and after he became administrator he did not claim in his
statement of account that as administrator he had advanced
Mrs. Elizalde anything. Therefore the court was justified in
its finding, for the advancements were in the nature of per-
sonal loans, chargeable only against the distributive portion
of the estate found to be due to Mrs. Elizalde. It is the law
of the case that these payments or advances have no place
in this action as a set-off to any sum found due to the estate
by Graves as administrator. (*Elizalde* v. *Murphy,* 4 Cal.
App. 114, [87 Pac. 245].)

Certain propositions are advanced upon behalf of appellant
Marre growing out of the following facts: Graves as admin-
istrator had at different times given two bonds in the sum of
twenty thousand dollars each. Subsequently he gave a third
bond for ten thousand dollars, upon which bond one of the
sureties was Luigi Marre. Luigi Marre has since died, and
this appeal is prosecuted by Gaspar Marre, administrator with
the will annexed of his estate. The first proposition advanced
is that the bond was not made in pursuance of any order
of court, notwithstanding that the findings declare that it
was, and that it is therefore void. The facts are that the
order of the court requiring Mr. Graves to give the additional
bond could not be produced. The bond itself, however, re-
cites the order and gives its date. This is conclusive upon
the surety. (*Tartar* v. *Hall,* 3 Cal. 263; *Coles* v. *Soulsby,*
21 Cal. 47; *Moore* v. *Earl,* 91 Cal. 632, [27 Pac. 1087].)
Appellants next contend that because the contract of surety-

ship imports entire good faith and confidence between the parties to the whole transaction and because the Elizalde heirs knew or suspected misconduct upon the part of the administrator, Marre is exonerated because he was not informed by them of their suspicions or belief. In this, however, appellants entirely misconceive the meaning of the law. The heirs of the Elizalde estate had nothing whatsoever to do with the procurement of Graves's sureties, did not even know Marre and did not even know that he was to become a surety. Still further, at the time that Marre became such surety the petition of the heirs asking for the removal of Graves as administrator for these derelictions of duty was on file and a matter of record. So, also, was the court's order settling the account which Graves himself had presented, and charging him with having in his possession funds of the estate to the amount of several thousand dollars, which settled account really forms the basis of this action. There is, therefore, nothing in this proposition. And, finally, the bond executed by Marre does not in terms limit his liability to the acts of the administrator after the execution of the instrument. The bond is general in terms, conditioned upon the faithful performance by the administrator of the duties of his trust. It is settled beyond controversy that under such circumstances the surety upon the bond of an administrator becomes liable for the breaches of trust of the administrator committed prior to his becoming such surety, as well as for those committed subsequent thereto. (*Irwin* v. *Backus*, 25 Cal. 223, [85 Am. Dec. 125]; *Powell* v. *Power*, 48 Cal. 234; *Chaquette* v. *Ortet*, 60 Cal. 594; *La Coste* v. *Splivalo*, 64 Cal. 35, [30 Pac. 571]; *Evans* v. *Gerken*, 105 Cal. 311, 313, [38 Pac. 725]; *Treweek* v. *Howard*, 105 Cal. 434, [39 Pac. 20].)

The final contention on behalf of appellant Marre is that no sufficient claim was presented against the Marre estate. The form of the claim was as follows:

"To cash due said estate of Marcos Elizalde, deceased, by reason of said Luigi Marre becoming surety on the bond of Ernest Graves as administrator of the estate of said Marcos A. Elizalde, deceased, the sum of......................$6163.65

"Interest on said sum from Aug. 1, 1900, at 7 per cent per annum.......................... 1063.90"

It is, of course, apparent that the exact amount due from the estate of Marre could not be stated until this accounting was had. The purpose of presenting a claim is to advise the party against whom the claim is presented of its nature. The code nowhere defines the precise form of such a claim. (Code Civ. Proc., secs. 1493, 1497, 1502.) In *Pollitz* v. *Wickersham,* 150 Cal. 238, [88 Pac. 911], it is said: "A claim against an estate is not required to state the facts with all the preciseness and detail required in a complaint, and its sufficiency is not to be tested by the rules of pleading." Assuming that the presentation of a claim against the estate of Marre was necessary under the circumstances here shown, we are clear that the claim which was in fact presented was sufficient to comply with the law, to convey notice of the nature of the claim, of the circumstances out of which it grew and its approximate amount, which manifestly was all that could be stated.

Certain errors in the admission and rejection of evidence are presented for consideration. It would unduly and unnecessarily extend this opinion to notice them. They have been examined and found without merit.

For the foregoing reasons the judgment and order appealed from are affirmed.

Lorigan, J., Angellotti, J., Shaw, J., Sloss, J., and Melvin, J., concurred.

Rehearing denied.

Beatty, C. J., dissented from the order denying a rehearing and filed the following opinion on October 12, 1912:

BEATTY, C. J.—I dissent from the order denying a rehearing of this cause, not for the reason that I differ with the court upon any of the questions discussed in their opinion, but because I think at least one of the questions presented by the record and in the briefs of counsel, but not discussed in the opinion, deserves further consideration.