[S. F. No. 11057. In Bank.—February 1, 1926.]

FLORIDE NOBLE, Respondent, v. EDWARD B. NOBLE et al., Trustees, etc., Appellants.

[1] TRUSTS—CONVERSION OF TRUST PROPERTY INTO CASH—INTERMINGLING OF FUNDS—DEATH OF TRUSTEE—STATUS OF BENEFICIARY—RIGHT TO PROCEED AGAINST FUND. — The trustee of an express trust, by the mere process of converting the *corpus* of the trust property into cash and depositing the same in his own name and to his personal credit in his bank, cannot thereby relieve himself of his duty to render an account of his trust and relegate the beneficiary to the position of a general creditor of himself or of his entirely solvent estate; and upon the death of such trustee, leaving a solvent estate with no creditors, the beneficiary is not relegated to the position of an ordinary creditor, and is not required to present a claim against the estate, but may proceed in equity against the fund of the decedent with which the trust moneys were intermingled.

[2] ID.—PERSONAL LIABILITY FOR NEGLIGENCE—DEATH OF TRUSTEE—FAILURE TO PRESENT CLAIM—SUIT IN EQUITY—JUDGMENT.—The liability of the trustee to the beneficiary for the negligent handling of the trust property is a personal liability which will properly form the foundation for a claim against his estate; and, where the beneficiary, without having presented any claim, proceeds in equity against the executors of the estate of the deceased trustee to impress a trust in the funds of the decedent with which the proceeds from the sale of trust property were intermingled, she is entitled to receive without diminution the entire remaining *corpus* which she can trace into the hands of those upon whom the estate of the trustee has devolved, but she is not entitled to receive anything based upon the responsibility of the trustee arising out of his negligent handling of the trust property.

(1) 3 C. J., p. 1410, n. 42; 4 C. J., p. 535, n. 8, p. 1068, n. 22; 39 Cyc., p. 526, n. 50, p. 536, n. 14, 16, 19, p. 637, n. 48.  (2) 39 Cyc., p. 513, n. 67, p. 514, n. 77, p. 526, n. 50, p. 536, n. 16.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

1. Following trust funds deposited in bank, note, 26 A. L. R. 3. See, also, 25 Cal. Jur. 357; 26 R. C. L. 1354.

Goodfellow, Eells, Moore & Orrick for Appellants.

Mervyn R. Dowd and John E. Bennett for Respondent.

RICHARDS, J.—This appeal is from a judgment in the plaintiff's favor in an action brought by her against the defendants who are sued in the capacity of trustees in the stead of her deceased brother, Patrick Noble, to have a trust impressed upon the properties of his estate in the hands of said defendants as executors thereof. The appeal is upon the judgment-roll and bill of exceptions which does not purport to set forth all of the evidence in the case. The appellants specify in said bill ten alleged errors of law committed by the trial court in the course of the trial of the cause, but as none of these is mentioned or commented upon in the briefs. of appellants' counsel they may be treated as having been abandoned upon appeal. The appellants also specify a number of respects wherein the evidence is asserted to be insufficient to support the findings of the trial court, but since the evidence has not been produced upon this appeal these specifications are also unavailing. The matters to be discussed upon this appeal are thus much simplified and are in fact reduced to but two inquiries. First, as to whether the findings support the judgment establishing the trust for any amount whatever, and, second, whether the findings support the judgment to the full extent of the plaintiff's claim; and if not to what amount or extent. The facts required to be collated from the findings as necessary to the determination of these two questions are few and simple. The plaintiff was in the year 1908 the owner of a certain piece of improved real estate in the city of Santa Monica in this state of the admitted value of $7,500. She was a young and inexperienced woman and the sister of Patrick Noble, an elder brother, a lawyer and a man of business and affairs, who came to her in that year with the suggestion that she convey said property to him without consideration, but with the understanding that he was to hold the same in trust for her, to render it productive of good interest and to return it to her whenever she should want it or he should no longer wish to handle it. He was to have full control of the property to manage as he saw fit and to sell or exchange for her benefit if he so desired.

Having the fullest confidence in her brother, the plaintiff made the conveyance and thereafter for about two years continued to live upon the property and to collect and keep for her own use the rents and avails of the property, amounting variously to from $75 to $125 a month. In 1910 Patrick Noble exchanged this property for a house and lot in San Francisco, the rents and issues whereof from that time forth he collected and kept. There were other transactions between the parties growing out of the estate of their deceased mother and also involving the care and support of a younger brother which it is not necessary here to review for the reason that the findings do not show these to be material to a determination of either of the questions involved in this appeal. In the year 1919 Patrick Noble sold the San Francisco property for the net sum of $3,684.14, which sum he deposited in his own name in a commercial account which he had theretofore established with the Anglo-California Trust Company, and upon which he drew and made deposits for his own purposes up to the time of his death, which occurred in October, 1920. For some time prior to his death Patrick Noble also maintained both a savings and a commercial account with the Mission Bank and at the time of his death he had in said savings account the sum of $462.22 and in said commercial account the sum of $1,430.47. He was also the owner during his lifetime and at the time of his death of bonds in various corporations of the aggregate value of $26,112.12 and of real estate of the value of $5,500. He left no creditors and by his will devised his estate to his son and heir, with defendants herein named as the executors thereof. For some years prior to his death the plaintiff had from time to time suggested to Patrick Noble that he convey back to her the trust property in the form in which it then was, but he had always put her off with the statement in effect that everything was all right and that he did not wish her to be troubled or to be troubled himself about the matter. The plaintiff was aware of the transaction by which the Santa Monica property had been exchanged for the San Francisco real estate and had consented thereto; but she was entirely unaware that the San Francisco property had been sold by Patrick Noble or that he had received and intermingled with his own accounts and properties the sum

received therefor until after his death. She then brought this action, with the result that the trial court determined and decreed that the defendants as executors of the estate of Patrick Noble, deceased, are trustees of plaintiff's property standing in his stead; that the value of the property of plaintiff originally impressed with said trust was the sum of $7,500, less certain advances made by Patrick Noble during his lifetime, amounting to $1,416.43, leaving a balance of $6,083.57, which the defendants as the trustees and executors of his estate were directed and decreed to pay over to plaintiff in fulfillment of said trust.

[1] The first contention which the appellants urge upon this appeal is that since the findings herein show that Patrick Noble in his lifetime so intermingled the property of the plaintiff held by him in trust with his own properties, that the identity thereof can no longer be traced, the plaintiff cannot recover in this form of action, but has thereby been relegated to the position of a general creditor of his said estate; and that not having filed a claim against his said estate in the capacity of such creditor, as required by law, she cannot recover any sum whatever in the present action. We are not satisfied that the findings herein are susceptible of the interpretation which the appellants would have us place upon them. The answer of the defendants denies in detail and in its entirety the averments of plaintiff's amended complaint as to the creation and existence of any such trust as is set forth therein. The trial court found that the allegations of the plaintiff's amended complaint were true and that the denials and affirmative allegations of the defendants' answer were untrue. The trial court further found that on or about October 20, 1919, Patrick Noble, without the knowledge or consent or subsequent ratification of said plaintiff, had sold the trust property then situated in San Francisco for the sum of $4,000, the net of which amount he had deposited in the Anglo-California Trust Company to the credit of his own account in that bank and for which he had rendered to the plaintiff no accounting. The findings go no further and much of the argument which the appellants predicate upon Patrick Noble's subsequent withdrawals of practically the whole of this deposit is based upon fragmentary excerpts from the evidence which has not in its entirety been em-

braced in the record before us. We would be loath to hold
that the mere deposit by a trustee of the moneys of his
*cestui que trust* in his own personal account would consti-
tute such an intermingling of the trust funds with his own
funds as to obliterate the *corpus* of the trust and relegate
the *cestui que trust* to the position of a mere general creditor
of the trustee's estate. We are cited to no authorities that
go to the extent of so holding and we are satisfied that none
such exist. But aside from this insufficiency of the findings
to furnish a basis for the appellants' contention, we are not
satisfied with their statement of the law governing such a
case as this. The appellants strongly rely upon the case of
*Lathrop* v. *Bampton,* 31 Cal. 17–33 [89 Am. Dec. 141], as
sustaining their contention that when a trustee has com-
mingled with his own funds the *corpus* of the trust the right
of the trustor to assert the special lien of the original trust
against the general estate of the trustee is thereby lost. We
do not so read that case, since in that case it appeared that
the estate of the trustee was insolvent and the utmost that
the court can be credited with holding is that the *cestui que
trust* under such circumstances could be given no special lien
upon the trustee's insolvent estate which would be superior
to that of any other creditor therein. It is not necessary
to even discuss the obvious equity of such a holding, but
such a holding has no application to the facts of this case
wherein the trustee left a solvent estate with no creditors,
and wherein his heir or his personal representatives can-
not be conceived as standing on any other or better relation
to the trust and the properties thereof than that which the
trustee himself would have occupied if a living defendant
in this action. Neither can we conceive of a state of the
law by which a trustee of an express trust by the mere
process of converting the *corpus* of the trust into money
and depositing the same in his own name and to his personal
credit in his bank could thereby relieve himself of his duty
to render an account of his trust and relegate his confiding
trustor to the position of a general creditor of himself or
of his entirely solvent estate. We are cited by the respond-
ent to another very early case in our decisions which seems to
set forth the true rule in a situation similar to that presented
by the case at bar. It is the case of *Gunter* v. *Janes,* 9 Cal.
643. It was therein held that when a trustee mingles trust

moneys with other funds of his own the beneficiary is not, upon the death of the trustee, relegated to the position of an ordinary creditor of his estate, but may proceed in equity against the fund with which his trust moneys have been intermingled. In the opinion of the court upon rehearing the court makes perfectly clear its position with respect to such a transaction on the part of a trustee; and in so doing quotes the language of the Lord Chancellor in the case of *Docker* v. *Somes*, 2 Mylne & K. 655, as being distinguished with clearness, justice, and force. The court points out the distinction to be borne in mind in cases where the rights of creditors of the deceased trustee are involved as against those wherein the contest is solely between the *cestui que trust* and the administrator of the deceased trustee. We find no different rule laid down in any of the later decisions of this court to which we have been referred. The case of *Estate of Harrison Arms,* 186 Cal. 554, [199 Pac. 153], cited by the appellants, is clearly distinguishable as to its facts from the case at bar, since it appears that the trust property involved in that case was with the full and long-continued consent of the trustor so commingled with the property of the trustee that no part of it could be definitely traced or segregated from that of the trustee; while as to the law the court confines its discussion to the scope of the early case in *Lathrop* v. *Bampton, supra,* to the effect that the trustor "has in such a case no special lien upon the general estate of the trustee which is superior to that of any other creditor." In the case of *Elizalde* v. *Elizalde,* 137 Cal. 634 [66 Pac. 369, 70 Pac. 861], also cited by the appellants, it appears that the controversy was one between the alleged trustor and other creditors of the deceased trustee, but even in such a case the court cites with approval the following language used in Lewin on Trusts, 894: "If a trustee pay trust money into a bank to the account of himself, not in any way earmarked with the trust and also keeps private moneys of his own in the same account, the court will disentangle the account and separate the trust from the private moneys and award the former specifically to the *cestui que trust*"; and this, says this court, it will do even if the trustee, after so mingling the funds, has drawn therefrom from time to time, since it will be presumed that the moneys so drawn were from his own portion of the fund

rather than from the moneys held by him in trust. The most recent utterance of this court touching this subject is that found in *Newport* v. *Hatton*, 195 Cal. 132 [231 Pac. 987], wherein it was held that "when the money or property of the trustor can be traced into a particular fund or deposit where it remains, though mingled with other money, the beneficiary may seek to follow the specific personal property and enforce the trust. Though the identical pieces of coin cannot be identified yet if there is so much belonging to the trust in a heap of private and trust funds the *cestui que trust* is entitled to take so much out." That this court evidently thought that the foregoing doctrine was in harmony with its holdings in the case of *Elizalde* v. *Elizalde* and *Estate of Harrison Arms, supra*, appears from the citation in support thereof. We therefore conclude that the findings in the instant case are sufficient to sustain that portion of the judgment of the trial court which holds that the plaintiff was entitled to have imposed upon the estate of Patrick Noble a trust for some portion of the original *corpus* of the trust of which he had become the trustee without the necessity of presenting a claim against the estate of such trustee.

[2]  A more difficult question is presented when we come to consider the extent to which the plaintiff is entitled to go in her assertion of a right to impose the entire amount and value of the original trust property upon the estate of said trustee. By the findings of the trial court it is expressly found that while the value of the original property of the plaintiff transferred in trust to Patrick Noble was $7,500, it has also found that the property so taken in trust was subject to a mortgage to the amount of $1,416.40 which the trustee had paid off out of his own funds. It has further found that the said trustee had, with the consent of the trustor, exchanged said property for other property situate in San Francisco. The court then proceeds to find that Patrick Noble negligently suffered this last-named property to fall into disrepair to such an extent that the rental value thereof was greatly diminished and that such disrepair continued at the date of the sale thereof for the gross sum of $4,000. It is true that the trial court also finds that said Patrick Noble did not intend that the trustor should suffer loss through his negligent handling of the trust property and that he intended to stand responsible to her for the

value of the trust property as he received it, but this latter finding does not change the situation which arises out of the fact that he sold the property for but $4,000 and that the sum remaining as a result of said sale, viz.: the sum of $3,684.14, constituted all of the *corpus* of said trust which had come into his hands as a result of such sale and also constituted all of the money representing such *corpus* of the trust property which had been deposited by him to his own account in his bank and which was in any way identifiable as constituting the trust property in his hands. His responsibility to his *cestui que trust* arising out of his negligent handling of the trust property, while doubtless existent, was a personal liability which would properly form the foundation of a claim against his estate, but it could not be said to form a part of the *corpus* of the trust property which the plaintiff would be entitled to follow into the hands of the executors of the deceased trustee's estate. As to such a liability the plaintiff would be relegated to the remedies provided for the violation of trust obligations in the ordinary course of law. (39 Cyc., pp. 513, 514, and cases cited.) On the other hand, we think the plaintiff would be entitled to receive without diminution the entire remaining *corpus* which she had succeeded in tracing into the hands of those upon whom his estate had devolved. This amount, as we have seen, was the sum of $3,684.14, which the trial court found to be the net amount deposited to his bank account by the trustee after the sale of the trust property. The judgment should have been confined to said sum. It is therefore so modified as to order, adjudge, and decree that the defendants as trustees and executors of Patrick Noble, deceased, and his estate pay unto plaintiff in pursuance hereof the sum of $3,684.14, together with costs taxed at $78, and that the plaintiff herein recover her costs upon this appeal.

Lawlor, J., Seawell, J., Curtis, J., Shenk, J., and Waste, C. J., concurred.

Rehearing denied.