CHARLOTTE B. CRAMER, Plaintiff and Appellant, v. EVELYN H. BIDDISON, Individually and as Co-executrix, etc., et al., Defendants and Respondents.

Donald J. Kennedy, Eleanor M. Kraft and Kraft & Kraft for Plaintiff and Appellant.

Joseph C. Brashares and Harold A. Ritchie for Defendants and Respondents.

FLEMING, J.—Charlotte Cramer appeals an order dismissing her action against Evelyn Biddison and Harold Angerhofer, executors of the estate of Glen Hummer. The order followed appellant's refusal to amend her second amended complaint after demurrers had been sustained to her pleading.

In 1959 appellant divorced Hummer. The judgment of divorce incorporated a stipulation of the parties stating in relevant part: "Defendant shall maintain insurance on his own life with death benefits of not less than $15,000.00 for each of the minor children, or a total of $45,000.00. Said insurance shall be maintained until the child in question reaches the age of majority or completes his or her college education, whichever first occurs. For the purpose of convenience, plaintiff shall remain the primary beneficiary under said policy or policies and the respective child shall become the secondary beneficiary, it being understood that upon a child's reaching majority or completing his or her college education, that defendant's obligation to maintain said insurance shall cease and all rights in said policy . . . shall become and remain . . . the property of defendant."

After the divorce Hummer apparently made his estate the beneficiary of all his life insurance policies except one $12,000 policy of which Mrs. Cramer was the beneficiary. At the time of Hummer's death in May 1962, his three children were still minors and none of them had graduated from college. In this action appellant seeks to establish a constructive trust to enforce the insurance provision of the divorce judgment.

The first cause of action was brought against respondents as executors of Hummer's estate and alleges that after the divorce Hummer wrongfully, fraudulently, contemptuously, and in direct violation of the stipulation and judgment changed the beneficiary from Mrs. Cramer to his estate on all his life insurance policies except one $12,000 policy; that Hummer was obligated by the stipulation and judgment to maintain $15,000 of insurance per child with appellant as primary beneficiary; that since he had only $12,000 of such insurance at the time of his death, his estate had wrongfully been made the beneficiary of $33,000 of insurance.

The last two paragraphs of the first cause of action read:

"Following their appointment as co-executors, the defendants proceeded to collect the life insurance policies payable to the estate, including the policies wrongfully changed, in

the sum of $58,003.13. On February 19, 1963, defendants filed, or caused to be filed, an inventory and appraisement in said probate, claiming all the proceeds from the life insurance as assets of the Estate. Since February 19, 1963, the defendants have retained the benefit of, and have exercised control over, all the proceeds from said insurance policies.

"Defendants, as representatives of the Estate of Glen E. Hummer, deceased, have no legal right or interest in $33,-000.00 of the proceeds from decedent's life insurance and, because of the wrongful act of decedent in changing the beneficiaries of said policy, the defendants, as representatives of his Estate, are involuntary or constructive trustees of $33,-000.00 in cash, and of the interest thereon at the legal rate from the date on which defendants received said proceeds until judgment herein."

Appellant prayed that respondents be declared constructive trustees of $33,000 with interest, that she be allowed to trace the funds into the estate, and that she be given a deficiency judgment for sums not capable of being traced.

The general demurrer to the first cause of action should have been overruled. ■ Imposition of a constructive trust is authorized by section 2224, Civil Code: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

■ The elements of a cause of action under this section are three: the existence of a thing, plaintiff's right to the thing, and defendant's gain of that thing by fraud, etc.

Respondents contend that the first cause of action is defective because it does not sufficiently identify the property sought to be impressed with a trust. Respondents suggest that the complaint should have identified the policies of which the proceeds were the fruits. But the fruits are what appellant seeks, and proof of the existence of the tree on which they grew seems to us to be a matter for trial. Appellant wants respondents declared constructive trustees of $33,000. By alleging their receipt of $58,003.13 in insurance proceeds she has pleaded their receipt of $33,000 in insurance proceeds.

■ "When the money or property of the trustor can be traced into a particular fund or deposit, where it remains, though mingled with other money, the beneficiary may seek to follow the specific personal property and enforce the trust." (*Newport* v. *Hatton,* 195 Cal. 132, 150 [231 P. 987];

*Noble* v. *Noble,* 198 Cal. 129, 132-135 [243 P. 439, 43 A.L.R. 1235].)

Respondents argue that the insurance provision of the divorce judgment was void, and that since appellant's claim to the insurance proceeds derives from a void order, the first cause of action was generally demurrable. Respondents' argument is based on two purported rules: that a divorce court's authority to order support for minor children is limited to a money allowance; that a divorce court cannot require a parent to maintain insurance as security for child support payments. These rules were rejected by this court in *Franklin Life Ins. Co.* v. *Kitchens,* 249 Cal.App.2d 623, 630, 631 [57 Cal.Rptr. 652]. And in any event respondents as successor to Hummer were estopped by his stipulation from challenging the divorce judgment. The judgment gave Mrs. Cramer a right enforceable against Hummer during his lifetime by contempt proceedings or by a suit for specific performance, and enforceable against his executors after his death.

Respondents argue the complaint does not adequately aver a wrongful act. The complaint charges that Hummer changed beneficiaries on all his life insurance policies. If he changed beneficiaries on all his policies, he changed it on those on which the divorce judgment required Mrs. Cramer to be carried as beneficiary.

It is suggested that appellant has filed a claim against the estate for $33,000, that the claim has been approved by the executors and by the probate court, and therefore appellant is estopped from bringing this suit. But in ruling on a general demurrer a court looks only to the pleading demurred to. An allegation that a claim against the estate has been approved is not an element of appellant's cause of action, and therefore the filing and approval of a claim, if controlling on the issues, should be asserted in respondents' own pleadings.

Respondents by special demurrer charged that the first cause of action was ambiguous, uncertain, and unintelligible in averring both that the proceeds were payable to Hummer's estate, and that the executors were constructive trustees of the proceeds. But constructive trust is an equitable remedy. One is not entitled to it because one had legal title to property belonging to another, but because one has an equitable right to property legal title to which stands in another. (*Bainbridge* v. *Stoner,* 16 Cal.2d 423, 428-429 [106

P.2d 423].) The special demurrers should have been overruled.

We turn to the second, third, and fourth causes of action against Biddison and Angerhofer, jointly and severally. The second count alleges that on or before 25 May 1962 Mrs. Cramer called respondents' attention to the life insurance provisions of the divorce judgment, that they thereafter collected the insurance proceeds, that they ''wrongfully came into possession of the sum of $33,000.00 which was no part of the assets of the Estate.'' The third count alleges that ''subsequent to the collection by defendants of the insurance proceeds . . . plaintiff demanded of defendants the payment to her of . . . $33,000.00 . . . Defendants failed and refused to pay said sum . . . By reason thereof, defendants became involuntary trustees for plaintiff.'' The fourth count alleges that ''defendants have used the said insurance proceeds to pay the debts and expenses of administration of said Estate, leaving an amount less than the sum claimed by the plaintiff . . . defendants breached their duty owing to plaintiff as involuntary trustees.'' Respondents demurred generally and specially to each of these counts.

We think the general demurrers to these counts were properly sustained. The acts alleged by appellant to have been wrongful acts of respondents were consistent with the performance of their duties as Hummer's executors. By alleging that the policies were payable to the estate, appellant alleged a fact which, if proved, would have protected them from liability to appellant in the absence of a judicial determination that the proceeds were actually hers.

While it is true, as a general proposition, that ''The representative has no right . . . to collect the proceeds of an insurance policy that is not an asset of the estate, and if he does so, he holds the proceeds . . . as the agent or trustee for the benefit of the beneficiary'' (20 Cal.Jur.2d, Executors and Administrators, pp. 420-421), the key word in this proposition is ''beneficiary.'' When respondents performed the acts complained of, the estate was beneficiary.

''While . . . property held by a decedent in trust is not a part of his estate, and cannot be applied in satisfaction of his debts, or form a portion of his estate to be distributed to his heirs . . . the administrator . . . is not released from his duty to maintain the right of the estate to such property until it has been finally judicially determined that it is not

the property of the estate." (*Elizalde* v. *Murphy*, 11 Cal.App. 32, 36 [103 P. 904].)

Assuming for the moment that appellant may eventually establish a right to certain insurance proceeds, the case seems comparable to *Hurlbert* v. *Title Ins. & Trust Co.*, 181 Cal. 692 [186 P. 142]. Hurlbert and his sister were joint tenants of personal property. The sister, the decedent, unbeknownst to Hurlbert, used some of the joint funds to purchase stock. The executor received the stock as part of the sister's estate, but thereafter failed to pay a special assessment levied on the stock, as a result of which the stock was sold. Meanwhile, Hurlbert brought suit to have himself declared owner of the stock and this action was ultimately successful; he then discovered the sale, and sued the executor for the value of the stock, alleging negligence. In this action he failed, because the executor owed no duty to the plaintiff in his individual capacity. Although in the present case the acts complained of were acts of commission, the principle that where ownership is dubious or controverted it must be effectively asserted before the executor can be held personally liable for his treatment of the property seems fully as applicable as it was in *Hurlbert*.

The court in *Elizalde, supra,* declared that property not properly part of the estate could not be applied against decedent's debts. However, where the status of the property is controverted, the applicability of this rule must be determined by the facts of the case. Unfounded claims of trust between the decedent and the claimant cannot be allowed to disrupt the administration of an estate. The second amended complaint here was filed late in 1965, while administration of the estate began in 1962. What were the executors supposed to do between the notification by appellant that she claimed the proceeds and the bringing of her action to enforces her claim?

We think the pertinent rule was outlined in *Estate of Hart*, 51 Cal.2d 819 [337 P.2d 73], in which at page 827 the court said: "In defending in good faith against claims that the assets are trust funds held for the benefit of the claimants, he [the administrator] is entitled to treat the alleged trust funds as an asset, until judicially determined otherwise. (See *Eggert* v. *Pacific States Sav. & Loan Co.*, 53 Cal.App.2d 554 [127 P.2d 999].)" Judicial determination would necessarily include provisional remedies designed to preserve the status quo had appellant sought and made the showing necessary to obtain them. (*Estate of Dabney*, 37 Cal.2d 672, 682 [234 P.2d 962].)

In overruling the demurrer to the first count we do not mean to imply that appellant has established or can establish any specific lien against the insurance policies themselves. Nor do we undertake to adjudicate the priority of appellant's claim as against other creditors of the deceased or of his estate. See our discussion in *Franklin Life Ins. Co.* v. *Kitchens,* 249 Cal.App.2d 623 at pages 632-635 [57 Cal.Rptr. 652]. We merely recognize that appellant has pleaded a justiciable claim to the property, a claim whose merits, priorities, and effects can only be adjudicated after the specific facts on which the claim is based have been presented to the trial court.

The order of dismissal is affirmed as to the second, third, and fourth counts, and reversed as to the first count.

Roth, P. J., concurred.

HERNDON, J.—I concur in that portion of the majority opinion which holds that the first cause of action of appellant's second amended complaint alleges facts sufficient to state a cause of action for relief in the form of a declaration that respondents received the $33,000 of insurance proceeds as trustees of a constructive trust. However, I dissent from the holding that the facts alleged in the second, third and fourth causes of action are not sufficient to state a cause of action against respondents.

As I understand the law, the trustee of a constructive trust is personally liable to the beneficiary of the trust if he knowingly uses or dissipates the trust fund in a manner which is violative of the rights of such beneficiary. If, as appellant's pleading alleges, the executors, with full knowledge of appellant's adverse claim, and with knowledge of the facts constituting the basis of such claim, nevertheless used the funds in controversy to pay creditors' claims and expenses of administration without awaiting an adjudication of the merits of appellant's adverse claim, they did so at their peril. (20 Cal. Jur.2d, Executors and Administrators, § 260, pp. 420-421.)

It may be granted, as the majority opinion holds, that the executors acted properly in *collecting* the proceeds of all the insurance policies of which the estate was the named beneficiary and that it was their duty ''to maintain the right of the estate to such property until it [was] finally judicially determined that it [was] not the property of the estate.'' (Cf. *Elizalde* v. *Murphy,* 11 Cal.App. 32, 36 [103 P. 904].) However, it does not follow that they were justified in paying out

the insurance proceeds adversely claimed by appellant to discharge debts of the estate prior to some appropriate adjudication of appellant's adverse claim.

The majority opinion agrees that it is the law that "The representative has no right . . . to collect the proceeds of an insurance policy that is not an asset of the estate; and if he does so, he holds the proceeds . . . as the agent or trustee for the benefit of the beneficiary." The majority further observe that "the key word in this proposition is 'beneficiary'," and further that "When respondents performed the acts complained of, the estate was beneficiary."

The foregoing quotations from the majority opinion appear to me to betray a basic misconception. As I understand it, the key word "beneficiary" as used in the quoted rule of law means the equitable owner of the proceeds and the beneficiary of the *trust*. If appellant's claim to these insurance proceeds is ultimately found to be a valid claim, then the executors received and held these proceeds as the trustees of a constructive trust. To the extent that appellant's adverse claim is valid, she was in equity the true beneficiary of the insurance policy as well as the beneficiary of the resulting constructive trust.

The majority opinion acknowledges that "The court in *Elizalde, supra,* declared that property not properly part of the estate could not be applied against decedent's debts" but declares that "where the status of the property is controverted, the applicability of this rule must be determined by the facts of the case." After the observation that "Unfounded claims of trust between the decedent and the claimant cannot be allowed to disrupt the administration of an estate," the following question is posed: What were the executors supposed to do between the notification by appellant that she claimed the proceeds and the bringing of her action to enforce her claim?"

It seems to me that the obvious answer to the foregoing question is this: That in view of appellant's claim, and the disclosure of the very substantial basis upon which her claim to ownership of the insurance proceeds was grounded, the executors should not have disbursed the fund in question without awaiting an adjudication of the validity of appellant's claim. The executors would have been well advised, I believe, to have filed in the probate proceedings a petition for instructions,

In view of the more realistic modern concept of probate jurisdiction as recently enunciated in *Estate of Baglione,* 65 Cal.2d 192, 196-197 [53 Cal.Rptr. 139, 417 P.2d 683], it seems probable that the ownership of the fund in question could have been litigated and decided in the probate proceeding. However, if it were held that the Probate Court lacked jurisdiction to adjudicate the controversy, that court would have instructed the executors to proceed in the appropriate forum to the end that the rights of the parties with respect to the fund in controversy might "be determined by the facts of the case."

I agree that respondents' allegation that appellant had filed a creditor's claim afforded no basis for the order sustaining the demurrers. Moreover, even if it were a stipulated fact that such a claim had been filed and approved, I seriously doubt that the legal inconsistency in the theories underlying the presentation of an ordinary creditor's claim and the assertion of a claim based upon the alleged existence of a constructive trust is such that the filing of the creditor's claim would operate to estop the claimant from asserting the alternative legal theory. In other words, there is nothing misleading or self-stultifying in the conduct of a litigant who says in substance, "I claim these insurance proceeds as their equitable owner, but if it be held that this claim is legally untenable then I am at least entitled to assert my claim as a creditor."

I would reverse the order of dismissal as to all counts.

Appellant's petition for a hearing by the Supreme Court was denied March 6, 1968.